**The STATE of Ohio, Appellee,**

**v.**

**HAWKINS, Appellant.**

[Cite as *State v. Hawkins* (1997), 120 Ohio App.3d 277.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 96–P–0213.

Decided May 19, 1997.

278

*Victor V. Vigluicci*, Portage County Prosecuting Attorney, and *Paul J. Galla-gher*, Assistant Prosecuting Attorney, for appellee.

*Brian D. Dunbar*, for appellant.

CHRISTLEY, Judge.

This appeal emanates from a final judgment of the Portage County Court of Common Pleas wherein a jury found appellant, Pamela P. Hawkins, guilty of drug abuse after the trial court denied her pretrial motion to suppress certain evidence. We affirm the action of the trial court.

The verdict arose from the following set of facts. In early May 1995, the Portage County Sheriff's Department was informed via tips that a party was to be held on the grounds of 3177 Cook Road in Rootstown, Ohio, on May 6–7, 1995. The police were told that this birthday and "welcome home from jail" party would involve a great deal of illegal drug activity. Acting on these tips, two undercover agents were sent to investigate the matter. After arriving at the property, which contained a one-story home, campers, a carnival tent, and a multitude of vehicles, the officers purchased tickets and entered the party. Upon entering the premises, agent Dale Tygeski smelled burning marijuana and observed "countless pot smoking." On two separate occasions that night, Tygeski purchased "crank" (methamphetamine) from guests at the party: once in the property's yard and once in the basement of the home.[1] After purchasing the crank, the officers left and field-tested it, confirming that it was indeed crank, a controlled substance.

Based upon this information and the evidence that he had collected, Tygeski prepared a search warrant and affidavit. Judge Dickinson, of the Portage County Municipal Court, issued a nighttime search warrant at 2:30 a.m. on May 7, 1995. As a result, approximately thirty law enforcement officers were assembled to execute the warrant on the premises.[2] As part of the execution of the warrant, Deputies Carrozzi and Hudack knocked on the door of appellant's camper, which was located at the back of the property. After the door was opened, the deputies asked the six occupants to exit and informed them that they had a warrant to search the premises. Upon searching appellant's camper, Carrozzi found a black fanny pack containing women's cosmetics, appellant's driver's license, and a bottle of pills containing allergy medicine and three unit doses of lysergic acid diethylamide ("LSD"). At that point, appellant was arrested.

On September 15, 1995, appellant was indicted by the Portage County Grand Jury on one count of drug abuse, a fourth-degree felony. The indictment alleged that appellant knowingly possessed a controlled substance, LSD in violation of R.C. 2925.11(A). Appellant was arraigned on October 23, 1995, at which time she

---

1. Appellant was not involved in either sale.

2. Tygeski was not involved in the execution of the warrant.

entered a not guilty plea and was released on a $1,000 personal recognizance bond.

On December 4, 1995, appellant filed a motion to suppress evidence. On December 18, 1995, the court held an evidentiary hearing on the motion and summarily denied it without issuing an opinion as to its reasons.

The case was tried to a jury on March 12 and 13, 1996. Appellant's motion for acquittal was denied, and the defense did not present any testimony. On several occasions, appellant's counsel renewed his objections to the validity of the search of appellant's camper, but to no avail. The jury returned a guilty verdict on March 13, 1996, and appellant was subsequently referred to probation for a presentence investigation.

On June 3, 1996, appellant filed a motion for a minimum sentence. On June 6, the trial court overruled appellant's motion for a minimum sentence, sentenced appellant to a suspended prison term of six months, fined her $1,500, and placed her on one year of probation. Her driving privileges were also suspended for six months. Appellant then filed the instant appeal, asserting the following assignments of error:

"1. Whether the trial court erred by failing to suppress evidence where the authorities searched the appellant's camper without a search warrant.

"2. Whether the trial court erred by failing to suppress evidence where the warrant that was obtained by the authorities failed to particularly describe that the appellant's camper was to be searched.

"3. Whether the trial court erred by sentencing the appellant on a fourth degree felony where the jury verdict form merely found the appellant guilty of drug abuse without specifying the amount or type of illegal drug involved."

Appellant's first and second assignments of error both pertain to appellant's claim that the police officers did not have a warrant to search her camper. Therefore, these two assignments will be considered together.

In the instant matter, the police had a valid search warrant to search "3177 Cook Road." At issue however is whether the warrant extended to the campers and tents located on the property, but outside of the home. Specifically, the search warrant authorized the police to search the following:

"PERSONS AND/OR PLACES, AND/OR VEHICLES TO BE SEARCHED:

"3177 Cook Road, Rootstown Township, Portage County at the north-west corner of the intersection of Cook Road and Sanford Roads; in Rootstown Township, Portage County, State of Ohio; a small single story, wooden framed residence; light yellow in color with brown shingles. This house having a front

door facing Cook Road with a slight roof or covering and wooden steps leading up to the front door.

"*With many camping trailers* and/or camping style tents on the adjacent mowed lawn and in the wooded areas of this property. A very large carnival style tent is located toward the rear of the house." (Emphasis added.)

Appellant argues that the phrase "[w]ith many camping trailers" only seeks to further describe the location of the house to be searched, whereas the state argues that the phrase actually authorized the search of the trailers and tents.

Upon our review, we find the phrase to be somewhat ambiguous because of the faulty grammar. The word "with" could appear to be further describing the property on which the house was located. However, because the phrase begins a new paragraph under the general heading "PERSONS AND/OR PLACES, AND/OR VEHICLES TO BE SEARCHED," it could also be read to mean that the trailers and tents were additional places to be searched.

■ Pursuant to the Fourth Amendment of the United States Constitution and Section 14, Article I of the Ohio Constitution, a person has the right to be secure against unreasonable searches. Moreover, a warrant must particularly describe the place to be searched in order to prevent prohibited general searches. To safeguard these constitutional rights and deter illegal police behavior, evidence taken in derogation of the Fourth Amendment is normally to be excluded.

■ However, a good faith exception to the exclusionary rule has been recognized, which permits the introduction of evidence obtained by officers who reasonably relied on a search warrant issued by a detached and neutral magistrate, where no deterrent purpose would be served by excluding evidence under the circumstances present. In other words, the exclusionary rule should not deter officers who believe that their conduct was lawful.

In *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, the United States Supreme Court dealt with the good faith exception to the exclusionary rule, holding:

"The Fourth Amendment exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *Id.* at paragraph one of the syllabus.

The Supreme Court of Ohio adopted the good faith exception to the exclusionary rule in *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236.

 The test to determine if a search falls within the good faith exception requires the trial court to decide if the officer's reliance on the legitimacy of the search warrant was objectively reasonable, *i.e.*, would a reasonably well-trained officer have known that the search was illegal despite the magistrate's authorization? *Leon; State v. Navarre* (June 9, 1989), Wood App. No. WD–88–43, unreported, 1989 WL 61669. The state bears the burden of proving that the exception should apply in a particular case. *Navarre; State v. Klosterman* (1996), 114 Ohio App.3d 327, 683 N.E.2d 100.

 Upon review of the record before us, we agree with the trial court's decision to deny appellant's motion to suppress on the basis of the good faith exception. There was testimony presented as to what the executing officers believed the warrant covered. At the suppression hearing, Carrozzi testified that he believed that the phrase at issue was a separate sentence and paragraph and that it was not a part of the first paragraph. At trial, Carrozzi testified that he thought that they "were to conduct the search, any people's vehicles anything else like that on the property." Further, he testified that he understood the phrase to describe "the property that surrounds the house and what's on that property at that point." Although Carrozzi admitted that he never asked where he should search, he testified that he understood that he was supposed to "search persons, cars, vehicles, tents, anything including the residence."

Based on the faulty grammar of the warrant, we cannot conclude that the executing officers' beliefs were unreasonable. Moreover, the warrant was not *so* facially deficient that the executing officers should not have reasonably presumed it to be valid. *Leon.* In light of the format in which the warrant was written, it was reasonable for the officers to believe that they were to search the campers and tents in addition to the home. No deterrent purpose would have been served by suppressing the evidence. Thus, under the good faith exception to the exclusionary rule, the evidence was not suppressed.

We note that appellant initially argued that the police officers engaged in a warrantless search of her camper without consent or exigent circumstances. While we agree that appellant had a reasonable expectation of privacy, as previously discussed we do not find that the officers engaged in a warrantless search of appellant's camper.

Appellant's first and second assignments of error are without merit.

Under her third assignment of error, appellant argues that the jury's failure to state either the degree of the crime or the specific drug involved necessitated a finding of guilty to the least degree of the charged offense, pursuant to R.C. 2945.75(A)(2). She argues that because the jury had to find specifically that she

possessed LSD, she should be found guilty of only the least serious offense of R.C. 2925.11, possessing or using marijuana. R.C. 2945.75 provides:

"(A) When the presence of one or more additional elements makes an offense one of more serious degree:

" * * *

"(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

In the instant case, the jury verdict form merely stated that the jury found appellant "guilty of drug abuse." However, the jury was specifically instructed that it could find appellant guilty of drug abuse only if it found, beyond a reasonable doubt, that on May 7, 1995, in Portage County, Ohio, she knowingly obtained, used, or possessed LSD. That instruction was consistent with the indictment read at the beginning of trial. Thus, its guilty verdict indicates that the jury believed that she knowingly obtained or possessed LSD.

This was not an instance where there were additional elements present which would elevate or enhance the degree of the offense, *i.e.*, no evidence of a prior conviction, no distinction for the amount of the controlled substance possessed, etc. Thus, while it would have been preferable to have had a specific verdict form designating "lysergic acid diethylamide," the jury verdict was nevertheless sufficient.

Appellant's third assignment of error is without merit.

In that none of appellant's assignments of error have merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*

FORD, P.J., and NADER, J., concur.