The STATE of Ohio, Appellant,

v.

YOUNG, Appellee.

[Cite as *State v. Young* (2001), 146 Ohio App.3d 245.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2000–A–0078.

Decided Oct. 2, 2001.

*Thomas L. Sartini,* Ashtabula County Prosecuting Attorney, and *Angela M. Scott,* Assistant Prosecuting Attorney, for appellant.

*Jon T. Field,* for appellee.

---

FORD, Judge.

Appellant, the state of Ohio, appeals the October 24, 2000 judgment entry of the Ashtabula County Court of Common Pleas, granting a motion to suppress in favor of appellee, Shahara Young. The trial court found insufficient probable cause in the issuance of the second search warrant for appellee's residence.

Appellee and Byron Parker ("Parker") resided at 521 Audrey Place, Ashtabula, Ohio. On two different occasions, the Ashtabula Chief Housing Inspector, Jeffrey DiAngelo ("DiAngelo"), attempted to gain entry into 521 Audrey Place so that he could conduct an inspection to verify compliance with the Ashtabula Minimum Standards Housing Ordinance. DiAngelo was unable to obtain cooperation from either the owners of the house or the tenants, appellee and Parker. A notice was left on the door informing the tenants that an administrative search warrant was going to be obtained.

On March 17, 2000, upon the submission of an affidavit by DiAngelo, the Ashtabula Municipal Court issued an administrative search warrant allowing inspection of the residence at 521 Audrey Place. That same day, DiAngelo, accompanied by Vincent Grippe ("Grippe"), another housing inspector, Patrolman Thomas Clemens ("Patrolman Clemens"), Detective Robert Pouska ("Detective Pouska"), and Detective Joe Cellitti ("Detective Cellitti") executed the administrative search warrant. In situations where administrative search warrants are issued, police officers and/or detectives customarily accompany the housing inspectors to ensure their security by conducting a sweep of the house to determine whether it is safe to enter. Appellee and Parker were inside the residence. The three officers conducted a sweep of the residence to determine whether there were any other occupants. In plain view, Detective Pouska observed a baggy on the dining room table containing a green vegetable matter resembling marijuana. The contents of the baggy were later determined to be .436 grams of marijuana.

With this information, Detective Pouska left the residence to obtain a second search warrant that would allow police to conduct a more extensive search for additional contraband. Detective Pouska submitted an affidavit to the Ashtabula

Municipal Court requesting a search warrant. Detective Pouska's affidavit indicated that "he ha[d] reason to believe" and was "of the opinion" that there were illicit controlled substances, drug paraphernalia, drug contraband items, and evidence of drug abuse-related activity at the residence based upon his observation of the green vegetable matter resembling marijuana on a table in the dining room. After reviewing the affidavit with Detective Pouska, the Ashtabula Municipal Court issued a second search warrant. This warrant allowed for the seizure of drugs and other related contraband items, as worded in Detective Pouska's affidavit.

Detective Pouska returned to the residence to execute the search warrant. The officers conducted a search of the house using a drug-sniffing dog. Numerous packages of marijuana were discovered, along with $480 in cash and cocaine. Additionally, Parker informed the officers that a loaded weapon was concealed under the mattress. Appellee and Parker were arrested.

On May 3, 2000, appellee was indicted by the Ashtabula County Grand Jury on one count of preparation of drugs for sale with a specification, in violation of R.C. 2925.07(A), and one count of possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(a), both felonies of the fifth degree. Appellee was arraigned on May 9, 2000, pleading "not guilty" to both counts.

Subsequently, on July 7, 2000, appellee filed a motion to suppress, claiming that "the Ashtabula City Police Department, specifically Detective Robert Pouska, illegally and improperly obtained a search warrant for said premise[s] through a connivance with the Ashtabula City Housing Department." On July 13, 2000, appellant filed a response in opposition.

A suppression hearing was conducted on August 16, 2000. During the hearing, appellee called DiAngelo, Detective Pouska, and Detective Cellitti as witnesses. In particular, Detective Pouska testified that, while inspecting the house for other occupants, he observed a baggy of marijuana and a hemostat, a device used to hold marijuana cigarettes, on the dining room table.[1] Detective Pouska further stated that possession of the amount of marijuana that was observed, .436 grams, is a minor misdemeanor, meaning that police may not arrest an individual possessing such a quantity, but may issue only a citation. Detective Pouska added that the language used in the first paragraph of his affidavit was determined by the city solicitor's office, and that he has used this same language in every search warrant that he has ever executed pertaining to drugs, numbering over one hundred affidavits.

---

1. There was no reference to the hemostat in Detective Pouska's affidavit for the second search warrant.

The first paragraph of Detective Pouska's affidavit contained an exhaustive list of the illicit controlled substances under R.C. Chapter 2925, which he had reason to believe were being concealed based on his observation. In explaining the reason for including such language, Detective Pouska testified that with a search warrant on a drug house, there is uncertainty as to what will be discovered because it is possible to turn up one or all of the items listed. Detective Pouska testified that, based upon his observation of the marijuana and the hemostat, he believed that he could find additional contraband, such as the items listed in the first paragraph of his affidavit.

Appellant admitted into evidence the two search warrants and the affidavits supporting each search warrant. Additionally, appellant called Patrolman Clemens and Grippe as witnesses. Appellant argued that appellee's motion did not provide adequate notice of the issues that were going to be raised because appellee did not raise any arguments concerning the second search warrant; rather, appellee's motion alleged a "connivance" between the police department, Detective Pouska, and the housing department. Appellant further argued that, upon sufficient notice, a subpoena would have been executed for additional witnesses, including the judge who issued the second search warrant. The trial court granted a continuance so appellant could obtain additional testimony.

On August 31, 2000, appellant filed a supplemental response in opposition to appellee's motion to suppress, claiming that appellee's motion was vague, unaccompanied by a memorandum, and did not give adequate notice of the issues raised during the hearing. Appellant noted that the second search warrant was valid, the officers acted in good faith, and the evidence seized was admissible.

A continuation of the suppression hearing was held on September 14, 2000. Appellant informed the trial court that no additional testimony was going to be presented; however, the supplemental response that was filed adequately addressed the new issues that were raised during the first hearing.

In a judgment entry filed on October 24, 2000, the trial court granted appellee's motion to suppress the evidence seized pursuant to the second search warrant. The trial court stated that, although a reviewing court may not conduct a *de novo* review of probable cause contained in an affidavit, a reviewing court must review the sufficiency of the affidavit upon which a search warrant is issued. The trial court found that the baggy of marijuana was insufficient probable cause to support the second search warrant. In making this determination, the trial court disregarded paragraph one of Detective Pouska's affidavit because it was "boiler plate language" and was not based upon his first-hand knowledge or experience in this particular matter. The trial court also based its decision on the fact that the officers were not permitted to arrest appellee for possession of the amount of

marijuana that was observed in plain view because such a quantity constituted only a minor misdemeanor.

Pursuant to Crim.R. 12(J), the state filed a timely appeal raising the following assignments of error:

"[1] The trial court erred when it conducted a *de novo* review of the magistrate's finding that sufficient probable cause was presented in the search warrant affidavit.

"[2] The trial court erred when it found that the search warrant affidavit lacked sufficient probable cause.

"[3] The trial court erred when it failed to recognize that even when it found the search warrant affidavit insufficient, the 'good faith exception' was applicable, and the suppression motion should have been overruled."

■ Briefly, before addressing the merits of appellant's arguments, it is necessary to point out that during the suppression hearing, appellee did *not* contest the validity of the administrative search warrant or the seizure of the baggy, containing .436 grams of marijuana, discovered in "plain view." [2] Specifically, the instant appeal deals only with the surrounding circumstances concerning the second search warrant.

In appellant's first assignment of error, the state contends that the trial court exceeded the role of a reviewing court by conducting a *de novo* determination of the probable cause contained in Detective Pouska's affidavit. Appellant argues that the trial court did not give any deference to the issuing judge's decision concerning probable cause; rather, the trial court substituted its own judgment of probable cause for that of the issuing judge.

■ In reviewing the issuance of a search warrant by a judge or magistrate, a trial court and an appellate court are barred from conducting a *de novo* review of the sufficiency of probable cause contained in an affidavit supporting the issuance of a search warrant. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus; *State v. Martin* (Dec. 6, 1996), Ashtabula App. No. 96–A–0016, unreported, 1996 WL 760915, at * 2. Neither a trial court nor an appellate court may substitute its judgment for that of the issuing judge or magistrate when reviewing the sufficiency of probable cause in an affidavit. *George* at paragraph two of the syllabus. Rather, "the duty of a reviewing court

---

2. The plain view doctrine provides that when police are lawfully and legitimately present at a location where contraband is observed in immediately apparent sight, police may seize that contraband and properly admit it as evidence against a defendant. See *State v. Waddy* (1992), 63 Ohio St.3d 424, 442, 588 N.E.2d 819; *Horton v. California* (1990), 496 U.S. 128, 136–137, 110 S.Ct. 2301, 110 L.Ed.2d 112.

is simply to ensure that the magistrate [or judge] had a substantial basis for concluding that probable cause existed." *Id.*

In the case *sub judice,* appellant's first assignment of error requires our determination only as to whether the trial court conducted a *de novo* review of the sufficiency of probable cause contained in Detective Pouska's affidavit. A fine line exists between reviewing the sufficiency of probable cause in an affidavit to ensure that the issuing judge had a substantial basis for concluding that probable cause existed and conducting a *de novo* determination as to whether the affidavit contained sufficient probable cause to issue a search warrant.

In the instant case, upon thoroughly reviewing the record and the judgment entry of the trial court, we conclude that the trial court did *not* conduct a *de novo* determination of the sufficiency of probable cause in Detective Pouska's affidavit. Rather, the trial court appropriately remained within the permissible bounds of review. The trial court's review centered solely on scrutinizing the contents of Detective Pouska's affidavit to determine whether the issuing judge had a substantial basis for concluding that probable cause existed. This was evidenced by the trial court's decision to disregard the first paragraph of Detective Pouska's affidavit because it was "boiler plate language * * * used in over a hundred cases and was not based upon * * * first hand knowledge or experience * * *." Additionally, there were numerous references to the holdings of *George* and *Illinois v. Gates* (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527, in the judgment entry, indicating the trial court's awareness that a *de novo* review of the sufficiency of probable cause in Detective Pouska's affidavit was not permissible. For the reasons stated, appellant's first assignment of error is without merit.

In appellant's second assignment of error, the state contends that, assuming that the trial court applied the proper standard of review to the magistrate's probable cause determination, the contents of Detective Pouska's affidavit presented more than a "fair probability" that additional contraband would be found. Appellant avers that sufficient probable cause existed solely on the fact that Detective Pouska, a thirty-year veteran law enforcement officer, had already observed marijuana in plain view at the residence. Appellant further argues that it is not relevant to the determination of probable cause to search whether police could have arrested appellee for that quantity of marijuana.

The Ohio Constitution, Section 14, Article I, guarantees the right of people to be free from unreasonable searches and seizures and provides that no warrants shall issue, but upon probable cause. A neutral and detached judge or magistrate may issue a search warrant only upon the finding of probable cause.

*United States v. Leon* (1984), 468 U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677.

■ When making the determination as to whether there exists sufficient probable cause in a supporting affidavit, the task of the issuing judge or magistrate " * * * 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place.'" (Emphasis added.) *George* at paragraph one of the syllabus, quoting *Gates,* 462 U.S. at 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527.

■ Probable cause is a fluid concept, turning on the assessment of probabilities, not readily reduced to a neat set of legal rules. *Gates,* 462 U.S. at 232, 103 S.Ct. 2317, 76 L.Ed.2d 527. Probable cause means the existence of evidence, less than the evidence that would justify condemnation, such as proof beyond a reasonable doubt or by a preponderance; in other words, probable cause is the existence of circumstances that warrant suspicion. *George,* 45 Ohio St.3d at 329, 544 N.E.2d 640, citing *Gates* at 235, 103 S.Ct. 2317, 76 L.Ed.2d 527. Hence, the standard for probable cause requires *only* a showing that a probability of criminal activity exists, *not* a prima facie showing of criminal activity. *George* at 329, 544 N.E.2d 640; *State v. Taylor* (1992), 82 Ohio App.3d 434, 440, 612 N.E.2d 728. When conducting an "after-the-fact scrutiny" of a supporting affidavit, a trial court or an appellate court must accord great deference to the determination of probable cause by the issuing judge or magistrate, resolving doubtful or marginal cases in favor of upholding the issuance of a search warrant. *George* at paragraph two of the syllabus; *Taylor* at 441, 612 N.E.2d 728. As stated, the role of a reviewing court is *only* to ensure that the issuing magistrate or judge had a substantial basis for concluding that probable cause exists.

In *George,* the Supreme Court of Ohio determined that the magistrate, who issued a search warrant for the defendant's residence and backyard, had a substantial basis for concluding that probable cause existed. *George* at 332, 544 N.E.2d 640. Specifically, upon observing the defendant in his back yard watering a marijuana plant, eight feet tall, the police officer submitted an affidavit stating:

"[He] believes and has good reason to believe that * * * there is concealed marijuana in a growing state * * * and other paraphernalia used to cultivate marijuana * * *.

"* * *

"Such belief is supported by the following facts: '* * * observed marijuana growing * * *.'" (Emphasis added.) *Id.* at 326, 544 N.E.2d 640.

Furthermore, the Supreme Court stated that even if the affidavit was insufficient, the evidence seized would be admissible under the "good faith exception" to the exclusionary rule. *Id.* at 330, 544 N.E.2d 640.

The instant case is readily distinguished from *George.* In *George,* the affidavit was narrowly tailored to cover a search for marijuana and materials used in the cultivation of marijuana and the preparation of marijuana for smoking. This was not unreasonable in view of the fact that marijuana was being cultivated in the defendant's backyard.

In the case *sub judice,* however, Detective Pouska used his observation of a single baggy of marijuana in an effort to go on a fishing expedition for controlled substances including cocaine, crack cocaine, heroin, LSD, and PCP.

During the suppression hearing, Detective Pouska testified as follows:

"[Question:] But in fact, you didn't have reasonable cause to believe that there was anything in that home except one small bag of marijuana and a hemostat; isn't that correct?

"[Answer:] Once I saw that, I thought I could find other things there.

"[Question:] You thought you might find a lot of other stuff, but you didn't have any reason to actually believe you would now, did you?

"* * *

"[Answer:] A search warrant on a drug house, it's possible to turn up one or maybe all of these items in a search of a drug house. And that's why these items are listed as they are. Because you don't find more or see more in the dining room doesn't mean you're not going to find crack cocaine or some other substance in the house."

The implication of Detective Pouska's testimony is that on the basis of his observation of a single baggy of marijuana, he had determined that appellee's residence was a "drug house," which conclusion was reinforced by his erroneous assumption that a "laundry list" affidavit and search warrant form had universal and omnipotent application regardless of the substantive scope of probable cause existing in a specific case. The assumption that appellee's residence was a "drug house" was not supported by any other evidence: Detective Pouska had not received a tip from an informant; he had not received complaints from a neighbor; the police had not observed the house, nor had they attempted to make a controlled buy; and Detective Pouska had no other direct evidence of any other contraband items to provide a panoramic basis of trustworthy probable cause.

In short, Detective Pouska treated his observation of a small baggy of marijuana in appellee's home as evidence of trafficking. In the absence of other indicia of trafficking, this was a violation of appellee's basic right to be free from

unreasonable searches. The search warrant should have been narrowly tailored to include those items which the police could have reasonably anticipated finding on the basis of observing a single baggy of marijuana, which would have included marijuana and marijuana-related paraphernalia.

The Fourth Amendment provides that "no Warrants shall issue, *but upon probable cause*, supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.*" (Emphasis added.) The United States Supreme Court noted in *Stanford v. Texas* (1965), 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431:

"These words are precise and clear. They reflect the determination of those who wrote the Bill of Rights that the people of this new Nation should forever 'be secure in their persons, houses, papers, and effects' from intrusion and seizure by officers acting under the unbridled authority of a general warrant. Vivid in the memory of the newly independent Americans were those general warrants known as writs of assistance under which officers of the Crown had so bedeviled the colonists."

The Fourth Amendment requirement of particularity prevents "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564. However, "[a] warrant describing 'items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit.'" *United States v. Wicks* (C.A.10, 1993), 995 F.2d 964, 973. As we stated previously, there was no evidence of trafficking, in the case *sub judice*, that would support a generic warrant for items likely to be found in the possession of a trafficker. And even if that had been the case, the affidavit at issue here still would have been unacceptable. The first paragraph of Detective Pouska's affidavit was simply a boilerplate list of the types of illicit controlled substances and contraband items, set forth in R.C. Chapter 2925:

"* * * [H]e has reason to believe that there is now being concealed * * * [at] 521 Audrey Place * * * illicit controlled substances, including * * * marijuana, cocaine, crack cocaine, heroin, * * * and/or any other controlled substance. * * * [H]e has reason to believe there is also being concealed in said premise paraphernalia or pieces of equipment used for purpose(s) of drug consumption, drug packaging * * * of illicit drugs/substances * * * and he has reason to believe there is now being concealed * * * quantities of cash, * * * firearms * * * and/or other contraband."

That the police would be incapable of more narrowly tailoring the affidavit to fit the circumstances based on the nature of the drugs actually being sold by a trafficker seems improbable.

Prospectively, we would hope that the attorneys involved in assisting the police officers in the department in question would render their expertise in tailoring the preprinted forms to each particular case to avoid the pitfalls of such double aught six scatter-gun approach to search and seizure exercises. Even in this age of circumscription of the gamut of the Fourth Amendment, some residual remnants still exist.

The right to be free of unreasonable searches precludes the issuance of a search warrant for a litany of narcotics based upon the observation of a misdemeanor amount of marijuana. Accordingly, the trial court properly found that there was no substantial basis or valid probable cause to conclude that that additional contraband would be found at appellee's residence. For the foregoing reasons, the state's second assignment of error is not well taken.

In the third assignment of error, appellant argues that, assuming that the search warrant was somehow insufficient, it was reasonable for Detective Pouska to believe that the search warrant was valid and that other contraband would be found based upon his observations and thirty years of experience. Appellant opines that Detective Pouska's reasonable reliance on the issuing judge's finding of probable cause warrants application of the "good faith exception" to the exclusionary rule.

The Fourth Amendment exclusionary rule, a judicially created rule to deter illegal police conduct, applicable to the states via the Fourteenth Amendment, provides that evidence obtained through unlawful searches and seizures is inadmissible. *Leon, supra,* 468 U.S. at 916, 104 S.Ct. 3405, 82 L.Ed.2d 677; *Mapp v. Ohio* (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. For instance, when a police officer knowingly or recklessly puts false information in an affidavit to mislead the issuing judge or magistrate, any evidence seized pursuant to that search warrant is inadmissible. *George,* 45 Ohio St.3d at 331, 544 N.E.2d 640. Also, when an issuing magistrate or judge is not a neutral and detached party or when any reasonable, well-trained officer would know or should know there was no iota of probable cause to conduct a search, the evidence seized is inadmissible pursuant to the exclusionary rule. *Id.* In addition, the exclusionary rule is an appropriate remedy when a search warrant is so facially deficient that the executing officer cannot reasonably presume its validity. *Id.*

Nevertheless, in certain situations, a "good faith exception" exists to the exclusionary rule because there is no police illegality to deter. *Id.* at 330–331, 544 N.E.2d 640, citing *Leon,* 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677; *State v. Wilmoth* (1986), 22 Ohio St.3d 251, 22 OBR 427, 490 N.E.2d 1236,

paragraph one of the syllabus.[3] The "good faith exception" provides that where evidence is obtained by police acting in *objectively reasonable reliance* on a search warrant issued by a detached and neutral magistrate or judge, which is later discovered to be unsupported by probable cause, the evidence seized remains admissible. *George* at paragraph three of the syllabus.

■ To determine whether a police officer's reliance on a search warrant was "objectively reasonable," this court held the test is whether a reasonably well-trained officer would have known that the search was illegal, despite the authorization of the issuing judge or magistrate. *State v. Hawkins* (1997), 120 Ohio App.3d 277, 282, 697 N.E.2d 1045. In demonstrating the applicability of the "good faith exception," the state bears the burden of proof. *Id.*

■ Here, appellant has failed to meet its burden of proof. As previously noted, the "good faith exception" does not apply where the officer should have known that reliance on the warrant would be unreasonable because it was based on information lacking in indicia of probable cause. *State v. Swearingen* (1999), 131 Ohio App.3d 124, 132, 721 N.E.2d 1097. In this case, Detective Pouska both applied for and executed the search warrant. In his affidavit, he alleged that he had reason to believe he would find heroin, LSD, PCP, firearms, ammunition, computers, electronic equipment, video equipment, and other contraband at appellee's residence. Clearly, he should have known that he could not expect to find all of those items in a house on the basis of his observation of a single baggy of marijuana, and that there was no indicia of probable cause to support the execution of the search warrant that was granted based on his affidavit. For the foregoing reasons, appellant's third assignment of error is without merit.

The judgment of the Ashtabula County Court of Common Pleas is affirmed.

*Judgment affirmed.*

WILLIAM M. O'NEILL, P.J., concurs.

GRENDELL, J., concurs and dissents.

---

**3.** In *Leon,* after obtaining a search warrant, police conducted a search of the defendant's apartment and discovered drugs, believing in good faith that the warrant was lawful and valid. *Leon* at 903–904, 104 S.Ct. 3405, 82 L.Ed.2d 677. It was later discovered that the credibility and reliability of the confidential informant, whose information was used to obtain the search warrant, was not substantiated; hence, there was no probable cause to support the search warrant. *Id.* The United States Supreme Court held that the exclusionary rule does not bar evidence that police discover while acting in good faith and in reasonable reliance on a search warrant that seems to be valid, but later found to be unsupported by probable cause. *Id.* at 920–921, 104 S.Ct. 3405, 82 L.Ed.2d 677.

GRENDELL, Judge, concurring and dissenting.

I agree with the majority's ruling and analysis as to appellant's first assignment of error, but I respectfully disagree with the majority as to appellant's second and third assignments of error. Therefore, I must respectfully dissent as to these assignments.

I share the majority's hope that attorneys, assisting police officers within our jurisdiction, use their expertise to tailor affidavits in support of warrants; however, the wide world of crime does not always lend itself to surgical precision by law enforcement. In the majority's admirable effort to protect some residual remnant of the Fourth Amendment, the majority seeks a level of warrant drafting precision that replaces what it calls "double aught six scatter gun" with an unrealistically stringent laser guided sharpshooter's rifle.

While the wording of the first paragraph of Detective Pouska's affidavit was styled in accordance to the city solicitor's preference, Detective Pouska signed the affidavit, attesting to its truthfulness. Additionally, Detective Pouska testified that he reviewed the affidavit with the issuing judge. The first paragraph of Detective Pouska's affidavit was simply an exhaustive list of the types of illicit controlled substances and contraband items, set forth in R.C. Chapter 2925, that he had reason to believe were being concealed at the residence based upon his observations and past experience. The first paragraph of Detective Pouska's affidavit stated:

"* * * [H]e has reason to believe that there is now being concealed * * * [at] 521 Audrey Place * * * illicit controlled substances, including * * * marijuana, cocaine, crack cocaine, heroin, * * * and/or any other controlled substance. * * * [H]e has reason to believe there is also being concealed in said premise paraphernalia or pieces of equipment used for purpose(s) of drug consumption, drug packaging * * * of illicit drugs/substances * * * [H]e has reason to believe there is now being concealed * * * quantities of cash, * * * firearms * * * and/or other contraband."

During the suppression hearing, Detective Pouska testified that he believed that it was possible to find one or all of the illicit items listed in R.C. Chapter 2925 based upon his observation of the baggy of marijuana, the hemostat, and his past experiences when marijuana was discovered.

Even setting aside the first paragraph of the affidavit, as the trial court did, Detective Pouska's affidavit indicated that a bag of marijuana was *already* discovered in plain view. Appellee did *not* contest the issuance of the administrative search warrant or the baggy of marijuana observed in plain view during the

execution of the administrative search warrant. The actual quantity of marijuana observed in plain view was not relevant to the determination of probable cause, nor was that information contained in Detective Pouska's affidavit. As stated by the majority, probable cause is the existence of circumstances that warrant suspicion, meaning a showing that a probability of criminal activity exists.

R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." If an individual is found possessing marijuana, then a violation of R.C. 2925.11(A) results in which that individual is guilty of possession of marijuana, a criminal offense. R.C. 2925.11(C)(3). Once this determination is made, only then does the amount of marijuana come into play to determine the penalty for the commission of the crime. See R.C. 2925.11(C)(3)(a) through (f).

As to the case before us, the amount of marijuana observed in plain view was less than one hundred grams; therefore, the penalty for such possession was a minor misdemeanor. See R.C. 2925.11(C)(3)(a). However, the Supreme Court of Ohio held that "the unambiguous language of R.C. 2925.11 punishes conduct for the possession of *any amount* of a controlled substance. * * * [T]he quantity of a controlled substance is *not* a factor in determining whether a defendant may lawfully be convicted of drug abuse, in violation of R.C. 2925.11(A)." (Emphasis added.) *State v. Teamer* (1998), 82 Ohio St.3d 490, 491–492, 696 N.E.2d 1049.

Although R.C. 2935.26(A) limits a police officer's authority in minor misdemeanor violations to issuing only a citation, the amount is not a factor in determining whether a criminal offense had been committed. "Even possession of a small amount of marijuana is a criminal offense, as a minor misdemeanor is a crime * * *." *State v. Conard* (June 22, 1978), Franklin App. Nos. 78AP–4 and 78AP–139, unreported, 1978 Ohio App. LEXIS 10709, at *10.

For the reasons stated, even setting aside the first paragraph of Detective Pouska's affidavit, the facts described in Detective Pouska's affidavit, indicating that contraband was *already* discovered in plain view, provided a substantial basis to support the issuing judge's conclusion that there was a "fair probability" that more contraband would be found at appellee's residence. The affidavit clearly demonstrated the existence of illicit narcotics activity. As indicated in the majority's opinion, great deference must be accorded to the issuing judge's probable-cause determination, with doubtful or marginal cases resolved to uphold the issuing judge's decision to grant a search warrant. Accordingly, the trial court erred in finding that there was no substantial basis to conclude that a fair probability existed that additional contraband would be found at appellee's residence. In view of that, the trial court erred in suppressing the evidence

obtained pursuant to the second search warrant. Appellant's second assignment of error should be sustained.

In the third assignment of error, appellant argues that, even assuming that the search warrant was somehow insufficient, it was reasonable for Detective Pouska to believe that the search warrant was valid and that other contraband would be found based upon his observations and thirty years of experience.

The majority concludes that Detective Pouska "should have known that he could not expect to find all of those items in a house on the basis of his observation of a single baggy of marijuana." How the majority reaches this clairvoyant conclusion is unclear. As noted above, Detective Pouska testified at the suppression hearing, based upon his considerable law enforcement experience, that he believed that it was possible to find one or all of those items predicated on his observations of the baggy and the hemostat. Thus, there was sufficient indicia of probable cause to support the execution of the search warrant.

Additionally, there is no indication that the issuing judge was not a neutral and detached party, or that any reasonable, well-trained police officer would know or should know that there was no probable cause to search. Further, upon examining the search warrant, there does not exist any facial deficiency. Thus, even if Detective Pouska's affidavit contained insufficient probable cause, the "good faith exception" would preclude application of the exclusionary rule because there is no police illegality to deter. Appellant's third assignment of error should be sustained.

Accordingly, for the foregoing reasons, I would reverse the finding of the trial court that granted appellee's motion to suppress the evidence seized under the second search warrant.