DECISION AND JUDGMENT ENTRY
{¶ 1} Grant Ashley Underwood appeals the judgment of the Scioto County Court of Common Pleas overruling his motion to suppress. Underwood contends that the trial court erred in overruling his motion to suppress evidence seized pursuant to a search warrant where the affidavit supporting the warrant failed to provide a substantial basis for the issuing judge to conclude that probable cause existed. Because we find that Underwood did not satisfy his burden of proving that the affidavit in support of the warrant contained false statements or material omissions, and the affidavit in support of the warrant contained sufficient information to support a finding of probable cause to issue the warrant, we disagree. Accordingly, we overrule Underwood's sole assignment of error and affirm the judgment of the trial court.
 I. {¶ 2} On January 27, 2003, Officer Bryant, an investigator with the narcotics division of the Portsmouth Police Department, prepared an affidavit in support of a search warrant for a mobile home, owned by Bobbie Jo Rickett and located at 930 29th Street, Lot 3, Portsmouth, Scioto County, Ohio. Officer Bryant's affidavit detailed information from numerous anonymous callers, known drug users, and confidential informants alleging that Underwood was selling drugs. The reports spanned from 1993 to 2003, with the vast majority of the information dating from 1993 to 1998 — five to ten years before the application for the search warrant.
 {¶ 3} Officer Bryant also averred that the Southern Ohio Law Enforcement Drug Task Force (the "Task Force") received information from a probation officer at the Adult Probation Department on June 26 and July 9, 1996 that Underwood was selling crack. Officer Bryant also indicated that both Rickett and Underwood had previously been arrested for various offenses, including Rickett's 1996 arrest for Trafficking in Crack Cocaine, and Underwood's 1995 arrest for Intimidation of a Witness. Additionally, Officer Bryant noted Underwood's October 1996 arrest and subsequent conviction for Drug Abuse and Trafficking in Drugs, for which Underwood served one year in the Ohio Department of Rehabilitation and Corrections ("O.D.R.C.").
 {¶ 4} Further, Officer Bryant averred that, on June 19, 1998, while executing a warrant at Underwood's address, officers found crack cocaine, power cocaine and Tylox pills, and that, as a result, Underwood was convicted of two counts of Possession of Cocaine, and Trafficking in Drugs. Officer Bryant also stated that, on December 11, 1998, Underwood was convicted of Attempted Possession of Drugs, and Possession of Drugs and served a sentence of approximately two years in the O.D.R.C.
 {¶ 5} The averments most contemporaneous with the issuance of the warrant are as follows:
"On December 30th, 2002 the FBI received information from a known drug user. The drug user stated that Ashley Underwood is selling powder cocaine and runs a business out of Jim Peach's old office on Kinney's Lane.
"On January 10th, 2003 Officers of the Southern Ohio Law Enforcement Drug Task Force received information from the FBI. The FBI stated that a confidential informant says that Ashley Underwood is selling cocaine and he is also selling long distance telephone service to say that is where he works and makes his money.
"On January 27th, 2003 Officers of the Southern Ohio Law Enforcement Drug Task Force received information from a confidential informant. The informant stated that on 1-26-2003 he was in the next to last trailer on the left hand side in the Portsmouth Mobile Home Trailer Park and their (sic) was 2 black males, 2-3 white males and a foreign looking guy present in the living room of the residence. The confidential informant stated that he observed one of the black males with a kilo of cocaine on the coffee table and had the top cut open and was scooping out the cocaine. The confidential informant stated that there was a second kilo of cocaine that was unopened and wrapped in an airtight bag on a shelf in the living room. The confidential informant stated that he saw a set of triple beam scales and a smaller set of digital scales on the table with the open kilo of cocaine. The confidential informant stated that the subjects inside the residence displayed an AR15 rifle and what the confidential informant described as 2 Mac 10 machine guns. The confidential informant stated that one of the black males made mention about not trying to rob them because they are ready if anyone does."
 {¶ 6} Officer Bryant's affidavit also details the following efforts to corroborate the confidential informant's information:
Officers of the Drug Task Force had the confidential informant to show us the location where this occurred and he had us drive into the trailer park and pointed to the above described residence which is the next to last trailer on the left in the Portsmouth Mobile Home Trailer Park. The vehicle that was parked outside of the trailer was the vehicle that Ashley Underwood drives which is registered to his mother Laverne Underwood. The statement that was made about being robbed is believed to be in reference to a recent robbery involving the 2 brothers of Ashley Underwood in which suspected drug dealers from Columbus, Ohio robbed them of drugs and money within the last 30 days. This Affiant has confirmed that Lot #3 is the trailer of Bobbie Jo Rickett who is known to this Affiant as being the girlfriend of Grant Ashley Underwood. From this Affiant[']s training and experience cocaine is packaged and shipped in Kilo's and triple beam scales and digital scales are used to weigh cocaine for resale. This Affiant further states that Grant Ashley Underwood is in fact a black male.
 {¶ 7} Based upon Officer Bryant's affidavit, the Portsmouth Municipal Court issued a search warrant for the mobile home located at 930 29th Street, Lot #3, Portsmouth, Ohio, any person found on said property and any vehicles found under the control of persons found on said property. The search warrant also covered any garages, out buildings, curtilage of said property, and any vehicles found on the property.
 {¶ 8} On January 29, 2003, the Portsmouth Police Department executed the warrant. Both Rickett and Underwood were present. During the search, Officers discovered, in relevant part, digital scales, two baggies of cocaine weighing approximately fifteen grams, two baggies of marijuana, and drug paraphernalia. The Grand Jury later indicted Underwood for possession of cocaine in violation of R.C. 2925.11(A)/(C)(4)(b).
 {¶ 9} Underwood entered a plea of not guilty. Thereafter, he filed a motion to suppress alleging that probable cause did not exist to issue the search warrant, and therefore, the court should suppress all evidence obtained pursuant to the warrant. Specifically, Underwood argued that the affidavit in support of the search warrant contained stale information, misleading information, and lacked facts to corroborate the hearsay statements of the various confidential informants. The trial court conducted a suppression hearing and later issued a judgment entry overruling Underwood's motion.
 {¶ 10} On November 14, 2003, Underwood withdrew his not guilty plea and entered a plea of no contest. Accordingly, the trial court found him guilty of Possession of Drugs/Cocaine, a violation of R.C.2925.11(A)/(C)(4)(b), a felony of the fourth degree, and sentenced him to fifteen months in prison.
 {¶ 11} Underwood timely appealed raising the following assignment of error: "The court erred in overruling the defendant's motion to suppress evidence seized pursuant to a search warrant."
 II. {¶ 12} In his sole assignment of error, Underwood contends that probable cause did not exist to support the issuance of a warrant, and, therefore, the trial court should have sustained his motion to suppress. Specifically, Underwood argues that: (1) the affidavit contained misleading information and material omissions; (2) the vast majority of the information in Officer Bryant's affidavit was stale; and (3) the affidavit fails to provide any facts to establish the veracity or reliability of the hearsay statements of the confidential informants.
 {¶ 13} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. Hatfield (Mar. 11, 1999), Ross App. No. 98CA2426, citing State v. McNamara (Dec. 23, 1997), Athens App. No. 97 CA 16, citing United States v. Martinez (C.A. 11, 1992), 949 F.2d 1117,1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995), 73 Ohio St.3d 308,314. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts. State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 14} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide the "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Both constitutional provisions further provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized." Id.
 {¶ 15} A neutral and detached judge or magistrate may issue a search warrant only upon the finding of probable cause. United States v. Leon
(1984), 468 U.S. 897, 914-915, 104 S.Ct. 3405, 3416, 82 L.Ed.2d 677; Crim.R. 41(C). In deciding whether to issue a search warrant, the issuing magistrate must scrutinize the affidavit in support of the warrant. Then the magistrate must make a practical, common sense decision, given all the circumstances set forth in the affidavit including the veracity and basis of knowledge of persons supplying hearsay information, whether "`there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" State v. George (1989),45 Ohio St.3d 325, paragraph one of syllabus, quoting Illinois v. Gates
(1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317, 76 L.Ed.2d 527. At trial, a court must exclude all evidence obtained in violation of a defendant'sFourth Amendment rights. Mapp v. Ohio (1961), 367 U.S. 643, 655,81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081.
 {¶ 16} Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence. State v. Young (2001), 146 Ohio App.3d 245,254, citing George at 329: Gates, 462 U.S. at 235. Probable cause only requires the existence of circumstances that warrant suspicion. Id. Thus, the standard for probable cause requires only a showing that a probability of criminal activity exists — not a prima facie showing of criminal activity. George at 329. Hearsay may serve as the basis for the issuance of a warrant as long as there is a substantial basis for crediting the hearsay. United States v. Ventresca (1965), 380 U.S. 102,108, 85 S.Ct. 741,745, 13 L.Ed.2d 684. (Citations omitted.)
 {¶ 17} In deciding whether an affidavit submitted in support of a search warrant sufficiently supports a finding of probable cause, a reviewing court must give great deference to the issuing magistrate's determination. George at paragraph two of the syllabus. See, also,Gates, 462 U.S. at 237. "[a]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Ventresca, 380 U.S. at 109; Gates, 462 U.S. at 237, fn. 10;George at paragraph two of the syllabus. A reviewing court simply decides whether the affiant presented enough facts to allow the issuing magistrate or judge to independently determine the existence of probable cause. Gates, supra, at 239.
 A. {¶ 18} Underwood first argues that Officer Bryant's affidavit contains false statements. Specifically, Underwood contends that Officer Bryant's affidavit indicates that he has more criminal convictions than he actually does.
 {¶ 19} In order to prevail on a motion to suppress based upon a false statement, a defendant must prove by a preponderance of the evidence that the affiant made a false statement, either intentionally, or with reckless disregard for the truth. Franks v. Delaware (1978), 438 U.S. 154,155-156, 98 S.Ct. 2674, 57 L.Ed.2d 667.
 {¶ 20} Here, Underwood claims that Officer Bryant incorrectly averred that he was convicted of Drug Abuse and Trafficking in Drugs in 1996. Officer Bryant's affidavit specifically states, "On October 26, 1996, Grant Ashley Underwood was arrested by the Portsmouth Police Department for Drug Abuse and Trafficking in Drugs. Grant Ashley Underwood was convicted and received 1 year in the O.D.R.C."
 {¶ 21} On cross-examination, Officer Bryant testified as follows:
Q. He was not in fact convicted of both of those charges, was he?
A. Without having his criminal history here in front of me I'm not sure of his conviction on both of them or one of them.
Q. If I tell you that in fact he was only convicted on one would you have any reason to dispute that?
A. No ma'am.
 {¶ 22} While Underwood alleges that he was only convicted of one of the October 1996 charges, he offered no evidence, nor does the record before us contain any evidence, to support his allegation.
 {¶ 23} Underwood also argues that the affidavit incorrectly states that he was convicted of two counts of Possession of Cocaine and Trafficking in Drugs, Attempted Possession of Drugs and one count of Attempted Possession of Drugs in 1998. Underwood claims that, in fact, he was only convicted of the latter two charges.
 {¶ 24} With regard to this allegation, Officer Bryant's avers, "On June 19th, 1998 Officers of the Southern Ohio Law Enforcement Drug Task Force executed a search warrant at Ashley Underwood's residence. Officers found crack cocaine, powder cocaine and Tylox pills. Ashley Underwood was on Parole for Drug convictions and was arrested and charged with Drug Abuse. Grant Ashley Underwood was convicted of 2 counts of Possession of Cocaine, and Trafficking in Drugs and sentenced approx. 2 years in the O.R.D.C." Then, Officer Bryant averred, "On December 11, 1998, Grant Ashley Underwood was convicted this date of one count of Attempted Possession of Drugs and One count Possession of Drugs."
 {¶ 25} Upon cross-examination at the suppression hearing, Officer Bryant testified that he obtained his information from the police department's arrest sheet and "intel data base." He also testified that he was personally involved in the execution of the June 19 search warrant. Officer Bryant's testimony regarding these charges and convictions is not exactly clear. His testimony reflects his belief that the December 11 convictions were the result of the June 19 search warrant. However, when Underwood's counsel asked Officer Bryant, "Are you aware, Officer Bryant, that those two paragraphs are referring to the same two convictions?" Officer Bryant responded, "No ma'am, I'm not aware of that."
 {¶ 26} Later in Officer Bryant's cross examination, the following exchange occurred:
Q. And certainly then you have personal knowledge that there were not four convictions in 1998, correct?
A. I'm not sure I understand the question. Can you repeat the question?
Q. Sure. You knew of your own personal knowledge when you prepared this affidavit for this search warrant that Mr. Underwood had not been convicted for four drug offen[s]es in 1998.
A. I can't say I immediately knew on the top of my head. I guess further investigation into this information would have confirmed that it's one incident and not two separate incidents.
 {¶ 27} Thus, Officer Bryant concedes that his affidavit may have contained erroneous information regarding Underwood's 1998 convictions. However, upon direct examination, Officer Bryant specifically testified he did not intend to mislead the court in any way.
 {¶ 28} Underwood has offered no proof that he has fewer convictions than Officer Bryant recites in his affidavit. Nor has he offered any proof that any misstatement Officer Bryant may have made regarding his prior convictions was either intentional or reckless. Thus, he failed to satisfy his burden of proving, by a preponderance of the evidence, that Officer Bryant made a false statement, either intentionally, or with reckless disregard for the truth. Moreover, Underwood does not dispute that, setting the contested convictions aside, Officer Bryant's affidavit correctly reflected that he had some prior drug convictions, or that he was sentenced to approximately three years in the O.D.R.C. — facts that the issuing judge could consider in determining whether probable cause exists. Given a lack of evidence proving: (1) the falsity of the contested statements and (2) Officer Bryant's intentional or reckless disregard for the truth, we conclude that any misstatement of Underwood's prior convictions resulted from simple negligence in recording the facts.
 B. {¶ 29} Next, Underwood argues that Officer Bryant's affidavit had material omissions. Omissions qualify as false statements if they are "designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." State v. Waddy (1992), 63 Ohio St.3d 424,441, quoting United States v. Colkley (C.A.4, 1990), 899 F.2d 297, 301.
 {¶ 30} Underwood argues that the affidavit refers to his business of selling long distance telephone service as a "cover" for narcotics sales, but that Officer Bryant failed to state that he is one of Underwood's long distance telephone customers. Underwood also notes that, while Officer Bryant testified that, upon his inquiry, several informants told him that they had not purchased cocaine from Underwood, Officer Bryant failed to mention these inquiries in his affidavit. Because we find these alleged omissions do not make it either more or less likely that contraband or evidence of a crime would be found in Rickett's trailer, we conclude that they are immaterial.
 {¶ 31} Additionally, Underwood argues that Officer Bryant's affidavit incorrectly infers that Underwood resided with Rickett, despite the officer's personal knowledge that the inference was inaccurate. The only statements in the affidavit linking Underwood to Rickett are: (1) "[t]he vehicle that was parked outside of the trailer was the vehicle that * * * Underwood drives which is registered to his mother Laverne Underwood[;]" and (2) "[t]his Affiant has confirmed that Lot #3 is the trailer of Bobbie Jo Rickett who is known to this Affiant as being the girlfriend of * * * Underwood." While these statements infer Underwood's presence at the trailer, they do not necessarily infer that Underwood resides there.
 {¶ 32} Underwood's residence in the trailer might make it more likely that contraband or evidence of a crime would be found there than if Underwood merely spent time there. However, the presence of a car that Underwood is known to drive at a trailer, coupled with the fact that the owner of the trailer is Underwood's girlfriend, does not necessarily give rise to an inference that Underwood resides in the trailer. Accordingly, we conclude that the omission of a specific statement that Underwood did not reside in Rickett's trailer is not material.
 C. {¶ 33} Next, Underwood argues that the vast majority of the information contained in Officer Bryant's affidavit was stale at the time the Officer applied for the warrant. Specifically, Underwood notes that only three of the confidential informant's hearsay statements occurred within one month of the application for a search warrant. The next most recent statement occurred four and one-half years before the application for a search warrant, and the remainder occurred between five and ten years before the application. Based upon our analysis in section D, below, we conclude that the allegedly stale statements of various confidential informants, anonymous callers, and known drug users are not essential to establish probable cause for issuance of the warrant. Accordingly, we find this argument moot and decline to address it.
 D. {¶ 34} Finally, Underwood argues that Officer Bryant's affidavit is insufficient to support the issuance of the warrant because it fails to provide a substantial basis for crediting the hearsay it contains. Specifically, Underwood argues that Officer Bryant failed to provide indicia of reliability for any of the anonymous callers, known drug users, and confidential informants who provided the information detailed in his affidavit. We focus our analysis upon the indicia reliability for the confidential informant who provided information to the police on January 27, 2003.
 {¶ 35} In Aguilar v. Texas (1964), 378 U.S. 108, 84 S.Ct. 1509,12 L.Ed.2d 723, and Spinelli v. United States (1969), 393 U.S. 410,89 S.Ct. 584, 21 L.Ed.2d 637, the United States Supreme Court set forth a two-pronged test for determining whether an informant's tip establishes probable cause for issuance of a warrant. To make a valid finding of probable cause under that test, a magistrate must be informed of: (1) the basis of the informants knowledge; and (2) sufficient facts to establish either the informant's veracity or the reliability of the informant's information. Aguilar, 378 U.S. at 114, 84 S.Ct. at 1514; Spinelli,393 U.S. at 413.
 {¶ 36} The Supreme Court later abandoned the rigid application of theAguilar-Spinelli two-pronged test in favor of a traditional "totality of the circumstances" test for probable cause in Gates, 462 U.S. at 238. However, in abandoning the two-prong test, the Supreme Court specifically found that those two elements remain "* * * relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." Id. at 233. (Citations omitted.) Thus, the elements of the Aguilar-Spinelli test remain relevant.
 {¶ 37} "A common and acceptable basis for the informant's information is his personal observation of the facts or events described to the affiant." State v. Karr (1975), 44 Ohio St.2d 163, 165; United States v.Harris (1971), 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723. Moreover, the United States Supreme Court has found that an informant's first-hand observation and explicit, detailed description of alleged wrongdoing entitles his tip to greater weight than might otherwise be the case.Gates, 462 U.S. at 234.
 {¶ 38} Here, Officer Bryant's affidavit indicates that the informant was present in the living room of the trailer owned by Rickett and personally observed the alleged wrongdoing. The affidavit indicates that the informant made a first-hand observation of the participants, who he described as two black males, two to three white males, and "a foreign looking guy" in the living room of the trailer. The informant provided an explicit, detailed description of the wrongdoing, describing the amount and location of the cocaine, the manner of packaging, the types of scales used, and the types of weapons present. The informant also detailed a statement of one of the participants, made in his presence, wherein the participant indicated that no one should try to rob them because they were ready.
 {¶ 39} This detailed description of alleged wrongdoing, based upon the informant's personal observation sufficiently demonstrates the informant's basis of knowledge under Gates, supra.
 {¶ 40} Underwood argues that Officer Bryant's affidavit fails to demonstrate the informant's reliability as required by Gates and the second prong of the Aguilar-Spinelli test. Specifically, Underwood claims that the Officer Bryant failed to state explicitly that the informant was reliable, to provide other indicia of reliability, or to corroborate the information through independent police investigation. Underwood contends that pursuant to State v. Dalpiaz, 151 Ohio App.3d 257, 2002-Ohio-7346, ¶ 37, the absence of any indication of the reliability of the sources that provided Officer Bryant with the information, the Officer's affidavit failed to establish probable cause for the issuance of the warrant.
 {¶ 41} We find Dalpiaz distinguishable from the facts of this case. InDalpiaz, the Eleventh District Court of Appeals noted that the affidavit contained statements made by confidential informants regarding the defendant's activities, but found that the affidavit contained no information suggesting that the information was received from reliable sources. Id. at ¶ 36. Unlike the affidavit in Dalpiaz, Officer Bryant's affidavit contains a substantial basis for crediting the hearsay. Specifically, Officer Bryant's affidavit establishes that he had knowledge of the following facts supporting the reliability of the confidential informant's information: (1) Rickett's prior arrest for Trafficking in Crack Cocaine; (2) Underwood's prior drug convictions, including, at minimum, his 1996 conviction for either Drug Abuse or Trafficking in Drugs, and his 1998 conviction for Attempted Possession of Drugs and Possession of Drugs;[2] (3) Underwood had previously been sentenced to a total of approximately three years in the O.D.R.C. for his prior drug offenses; (4) Rickett owned the trailer where the confidential informant stated he witnessed the two kilos of cocaine, scales, and guns; (5) Underwood was Rickett's boyfriend; (6) a car that Underwood drives, and that is registered to his mother was parked outside the trailer; (7) Underwood is a black male; (8) one of the black males in the trailer mentioned not trying to rob them because they were ready if anyone did; and (9) suspected drug dealers from Columbus, Ohio robbed Underwood's two brothers of drugs and money within 30 days before the execution of Officer Bryant's affidavit.
 {¶ 42} Therefore, Officer Bryant's affidavit establishes a close link between Underwood and Rickett, as well as a likelihood that Underwood frequented the trailer, based upon their relationship and the proximity of the car he was known to drive. Officer Bryant's averment that he knew someone had recently robbed Underwood's brothers of drugs and money offers some indicia of reliability to the informant's statement regarding the group's readiness if anyone should attempt to rob them. The totality of this information also permits a reasonable inference that one of the black males the informant witnessed at the trailer was Underwood.
 {¶ 43} Furthermore, Officer Bryant's knowledge of Rickett's prior arrest on a drug charge, and Underwood's prior arrest and conviction of several drug charges is a "practical consideration of everyday life" upon which an officer or magistrate may properly rely in assessing the reliability of an informant's tip. See, Brinegar v. United States
(1949), 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (holding the defendant's previous arrest by the searching officer for a similar offense was relevant, and properly considered in determining the existence of probable cause for a warrantless search); United States v.Harris, 403 U.S. at 582-583 (where a plurality of the court found that a magistrate could properly rely upon a policeman's knowledge of a suspect's reputation was a "practical consideration of everyday life" upon which a magistrate could properly rely in assessing the reliability of an informant's tip); State v. Boll (Dec. 16, 1981), Hamilton App. No. C-810078 (holding that where the information supplied by an unnamed informant is consistent with a reputation for a certain kind of criminal conduct by the subject of the search, and such reputation is supported by objective evidence of past conduct such as prior arrests or convictions, reliability may be inferred).
 {¶ 44} Based upon the foregoing, and keeping in mind the preference to be accorded to warrants in doubtful or marginal cases, we conclude that Officer Bryant's affidavit contained sufficient information to support a finding of probable cause to issue the warrant. Accordingly, we overrule Underwood's sole assignment of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of the sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.
[2] The convictions that Underwood claims are accurate.