The STATE of Ohio, Appellee,

v.

DALPIAZ, Appellant.

[Cite as State v. Dalpiaz, 151 Ohio App.3d 257, 2002-Ohio-7346.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2001–P–0044.

Decided Dec. 31, 2002.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Kelli K. Norman, Assistant Prosecuting Attorney, for appellee.

Stephens & Del Guizzi and Craig M. Stephen; Christley, Herington & Pierce and David S. Hirt, for appellant.

DONALD R. FORD, Judge.

{¶ 1} Appellant, Nicholas J. Dalpiaz, appeals from the March 9, 2001 judgment entry of the Portage County Court of Common Pleas.

{¶ 2} On July 7, 1999, Chief Detective Donald Doak of the Portage County Sheriff's Department ("Doak") applied for a warrant to search the home, garage, and barn at 8862 Freedom Road, Freedom Township, the address where appellant resided.[1] The proposed warrant was accompanied by an affidavit drafted by Doak. The warrant was issued to Doak, who served it on July 8, 1999. Among the items deputies recovered as a result of their search were 43 large bags and one small bag of marijuana and a large quantity of weapons and ammunition.

{¶ 3} A second warrant was sought on July 15, 1999. Again, an affidavit prepared by Doak was attached to the proposed warrant. The language in the warrant listing the property to be searched for and seized was identical to that of the July 7 warrant. The warrant was issued to Doak and was served by him on July 16, 1999. That search resulted in the seizure of 123 pounds of marijuana. A total of over 40 guns were seized in the course of the execution of the two warrants.

{¶ 4} A secret indictment was filed by the state on July 16, 1999. Count one of the indictment charged appellant with possession of marijuana in an amount that exceeded 20,000 grams, in violation of R.C. 2925.11(A)(C)(3)(f), a felony of the second degree. Count two of the indictment charged appellant with the illegal cultivation of marijuana in an amount exceeding 20,000 grams, in violation of R.C. 2925.04(A)(C)(4)(f), a felony of the second degree.

{¶ 5} On October 14, 1999, the state filed a superceding indictment containing three additional counts. Counts one and two were the same as those in the July 16 indictment. Count three charged appellant with the preparation of marijuana for sale, a violation of R.C. 2925.07(A)(C)(3)(c), a felony of the third degree; count four charged appellant with aggravated possession of drugs, in violation of R.C. 2925.11(A)(C)(3)(f), a felony of the second degree; and count five charged appellant with preparation of marijuana for sale, in violation of R.C. 2925.07(A)(C)(3)(c), a felony of the third degree.

{¶ 6} On December 22, 1999, appellant filed a motion to suppress the evidence obtained during the July 8 and July 16 searches of 8862 Freedom Road.

---

1. The property to be searched for and seized was described as "[a]ny drug processing, making, manufacturing, producing, transporting, delivering, possessing, storing, distributing, selling, using, or other-wise dealing with a controlled substances, and all other fruits and instrumentalities of the crime at the present time unknown. [Sic.] And any other narcotic drugs and/or controlled substances, instruments and paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, records of illegal transactions, electronic receivers, pagers, cellular phones, and any and all other telephone numbers/data contained within these devices. Articles of personal property, papers and documents tending to establish the identity of persons in control of the premises, contraband, including but not limited to money and weapons being illegally possessed therein, any and all evidence pertaining to violations of the drug laws of the State of Ohio; Ohio Revised Code, and all other fruits and instrumentalities of the crime at the present time unknown."

The state filed a brief in opposition to that motion. A suppression hearing was ultimately held on January 6, 2000. At the suppression hearing, appellant challenged the sufficiency of the two warrants and the constitutional validity of the affidavits supporting the warrants. In a January 21, 2000 judgment entry, the trial court overruled appellant's motion, holding that the evidence seized pursuant to the first warrant was admissible under the good faith exception to the exclusionary rule and that the evidence seized pursuant to the second warrant was admissible because there was sufficient probable cause for the issuance of the warrant.

{¶ 7} On October 12, 2000, appellant filed a written plea of no contest. The trial court found from the statement of facts that appellant was guilty. A sentencing hearing was held on February 16, 2001. In its March 9, 2001 judgment entry, the trial court sentenced as follows: one year in prison and a $5,000 fine on count one; one year in prison and a $5,000 fine on count two; one year in prison and a $5,000 fine on count three; eight years in prison and a fine of $7,500 on count four; and, one year in prison and a fine of $5,000 on count five, with the sentences to run concurrently.

{¶ 8} Appellant has filed a timely appeal of this judgment entry and makes the following assignments of error:

{¶ 9} "[1.] The trial court erred when it overruled the motion to suppress evidence found in the two searches of the structures on, and the yard of, the property because the search warrants authorized only a search of [appellant's] person.

{¶ 10} "[2.] The trial court erred when it overruled the motion to suppress evidence found in the two searches of the structures on, and the yard of, the property because both warrants' description of items to be seized was insufficient.

{¶ 11} "[3.] The [t]rial [c]ourt erred when it overruled the [m]otion to s[u]ppress [e]vidence found in the first search because the affidavit did not contain information sufficient to establish probable cause for issuance of the search warrant.

{¶ 12} "[4.] The [t]rial [c]ourt erred when it overruled the [m]otion to [s]uppress [e]vidence found in the second search because the affidavit did not contain information sufficient to establish probable cause for issuance of the search warrant.

{¶ 13} "[5.] The [t]rial [c]ourt erred when it ruled that the good faith exception to the exclusionary rule applied to both searches."

{¶ 14} Before addressing appellant's assignments of error, we would note that at the January 6, 2000 suppression hearing, appellant's counsel said,

"We're here today to challenge the sufficiency of two search warrants that were issued by this [c]ourt on July 7th and July 15th of 1999 * * *." He also suggested that "the applications and the affidavits * * *, which are the basis of the warrants, are unconstitutionally invalid." This court is of the view that the foregoing language was adequate to bring to the attention of the trial court the issues of the sufficiency of the search warrants and the flaws in the supporting affidavits.

{¶ 15} The state argues that appellant never challenged the sufficiency of the search warrants. While Crim.R. 47 mandates that a motion to suppress contain sufficient particularity to place the prosecution and the trial court on notice of the issues to be decided, the prosecution did not object at the suppression hearing when appellant raised the sufficiency issue, and, thereby, waived its right to do so at this juncture in the proceedings. *State v. Dwyer* (Feb. 22, 2002), 11th Dist. No. 2001–L–075, 2002 WL 255498, at * 4, fn. 6.

{¶ 16} In his first assignment of error, appellant argues that the search warrants did not adequately describe the place to be searched. The warrants described the person and place to be searched as "[appellant], located at 8862 Freedom Rd., Freedom Township, County of Portage, State of Ohio." The attached affidavits more fully described the premises as "[a] white single story sided home with an attached two car garage on the south end. With front porch facing west. With a concrete drive. A two story red barn located behind residence facing west. A basketball hoop located in driveway." Appellant suggests that the description of the property contained in the affidavits should not be considered in conjunction with the warrants, and that standing alone, the description of the property in the warrants is insufficient.

{¶ 17} R.C. 2933.24(A) provides that "[a] search warrant * * * shall show or recite all the material facts alleged in the affidavit, and particularly name or describe * * * the place to be searched * * *." "Both the affidavit and subsequent warrant must identify the property and the name or describe the person or place to be searched." 1 Katz & Giannelli, Criminal Law (1996) 166, Section 9.9. The standard for determining the sufficiency of the description of the premises to be searched is that " 'the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended.' " *State v. Pruitt* (1994), 97 Ohio App.3d 258, 261, 646 N.E.2d 547, quoting *Steele v. United States* (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 69 L.Ed. 757.

{¶ 18} Here, the warrant contained the address of appellant's residence. It did not specifically reference the barn, nor did it reference the curtilage of the residence. However, the Ninth Circuit has held that the curtilage is inseparable

for privacy purposes from a residence identified in a search warrant. *United States v. Gorman* (C.A.9, 1996), 104 F.3d 272, 275. The *Gorman* court cited *United States v. Brown* (M.D.Ga.1993), 822 F.Supp. 750, 754, for the proposition that " '[i]t seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard. It is a basic rule of logic that the greater generally includes the lesser.' " Following the logic propounded by the Ninth Circuit, we conclude that the residential address provided in the warrant implicitly included the curtilage of that residence.

{¶ 19} Whether a barn is part of the curtilage of a residence was addressed by the United States Supreme Court in *United States v. Dunn* (1987), 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326, and by this court in *State v. York* (1997), 122 Ohio App.3d 226, 701 N.E.2d 463. This is a fact-specific determination. Appellant, in this case, has failed to identify that portion of the record containing evidential material that would suggest that his barn was not part of the curtilage of his residence. In the absence of such material, we cannot overrule the trial court's determination that the description of the place to be searched provided by the warrant encompassed appellant's barn. Therefore, appellant's first assignment of error is without merit.

{¶ 20} In his second assignment of error, appellant contends that the descriptions of the property to be seized contained in the two warrants were not sufficiently particular. The Supreme Court of Ohio addressed the issue of the particularity of a search warrant in *State v. Benner* (1988), 40 Ohio St.3d 301, 533 N.E.2d 701. The court stated: "In search and seizure cases where a warrant is involved, the requisite specificity necessary therein usually varies with the nature of the items to be seized. Where * * * the items are evidence or instrumentalities of a crime, it appears that the key inquiry is whether the warrants could reasonably have described the items more precisely than they did." Id. at 307, 533 N.E.2d 701; *State v. Jefferson* (Aug. 6, 1999), 2d Dist. No. 17695, 1999 WL 959189, at * 5.

{¶ 21} In *State v. Martin* (Dec. 6, 1996), 11th Dist. No. 96–A–0016, 1996 WL 760915, this court addressed the requirement of particularity in a warrant. In *Martin*, the affidavit identified the following items as potentially being concealed at the premises:

{¶ 22} " 'Marijuana and/or other narcotics and/or controlled substances; instruments and paraphernalia used in the taking of illegal drugs and/or preparation of illegal drugs for sale, use of shipment, cultivate, manufacture, or otherwise engage in any part of the production of a controlled substance, Records of illegal drug transactions; personal property, papers and documents tending to establish the identity of person(s) in control of said premises; articles of communications

used in the furtherance of drug trafficking activities including, but not limited to, pagers, cellular telphones [sic] answering machines and answering machine tapes; Any and all proceeds from illegal drug trafficking activities including, but not limited to money and proceeds from drug transactions; Any and all contraband being unlawfully possessed therein including, but not limited to, weapons, such as firearms, but not limited to said firearms; Any and all records, receipts or papers of investments, savings, deposits or transfers of money, and/or cash, including, but not limited to check books, checking account statements, cancelled checks, saving books, savings account statements, certificates of deposit, stocks, bonds, records of mutual funds, real estate investments, purchases, insurance policies, safety deposit boxes and/or keys to same, gifts and cash; Any and all records of ownership, purchase sale transfer of disposition of real or personal property, including, but not limited to, real estate mortgages, mortgage statements, mortgage payment books, real property insurance, utility bills, motor vehicle titles, motor vehicle registrations, purchase agreements, personal property loans and loan statements; Any and all records, receipts or papers of employment, income and/or financial statements, including, but not limited to, federal, state and local tax forms; And any and all evidence of violations of the drug laws of the State of Ohio, to-wit: Ohio Revised Code Section 2925.11 and 2925.03, et seq.' " Id. at * 2.

{¶ 23} We held, "[T]he laundry list of items to be seized [was] far too vague to allow the officers executing the warrant to know just exactly what they were looking for without conducting a general rummaging. Hence, the search warrant was simply too broad and the trial court properly suppressed the use of any evidence seized as a result of the warrant." Id. at * 5.

{¶ 24} Similarly, in State v. Young (2001), 146 Ohio App.3d 245, 256–257, 765 N.E.2d 938, the affidavit supporting the warrant stated the officer who prepared the affidavit had reason to believe that marijuana, cocaine, crack cocaine, heroin, and any other controlled substances, as well as equipment for drug consumption and packaging, and quantities of cash and firearms were all being concealed at the premises to be searched. In Young, police executed an administrative search warrant so that Ashtabula's Chief Housing Inspector could conduct an inspection of the premises for the purpose of verifying compliance with the Ashtabula Minimum Standards Housing Ordinance. During the course of the search, an officer observed a baggy on the dining room table containing a green vegetable matter resembling marijuana. The baggy was later determined to contain a misdemeanor amount of marijuana. On the basis of that single observation, police obtained a second warrant to search for the laundry list of items detailed above.

{¶ 25} In upholding the trial court's suppression of the evidence seized pursuant to the second search warrant, we observed that the Fourth Amendment

provides " 'no Warrants shall issue, *but upon probable cause,* supported by Oath or affirmation, and *particularly describing* the place to be searched, and the persons or *things to be seized.'* " (Emphasis sic.) Id. at 256, 765 N.E.2d 938. This language reflects the determination of the authors of the Bill of Rights that people of this nation be free from search and seizure by officers acting under the authority of a general warrant. *Stanford v. Texas* (1965), 379 U.S. 476, 481, 85 S.Ct. 506, 13 L.Ed.2d 431.

{¶ 26} In the colonial era, British tax laws were enforced by customs officials, who used general warrants to search where they pleased for goods imported in violation of those laws. Id. The wounds opened by these abuses were still raw at the time the Bill of Rights was drafted. Thus, the authors of the Fourth Amendment included a requirement of particularity, which prevents "a general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564.

{¶ 27} However, the proscription against general warrants does not prevent the issuance of a broad and generic listing of the items to be seized if the circumstances do not allow for greater specificity. *United States v. Wicks* (C.A.10, 1993), 995 F.2d 964, 973. In *Young,* however, it would have been a simple matter to more narrowly tailor the warrant. Police had observed a single baggy of marijuana. Based on that observation, they could have reasonably anticipated finding marijuana and marijuana-related paraphernalia on the premises. They could not have reasonably anticipated finding crack cocaine, heroin, quantities of cash, or firearms. The affidavit was prepared based upon the officer's observation of a single baggy of marijuana in the appellant's apartment. We indicated that we thought it improbable that the police could not have more narrowly tailored the affidavit to fit the circumstances. *Young,* supra, at 256–257, 765 N.E.2d 938.

{¶ 28} In the instant case, at the time of the issuance of the first warrant, the police had received information alleging the following about appellant: (1) he made frequent trips behind his residence and to another location on Freedom Road; (2) he would often haul a large amount of water to those locations and this was consistent with the cultivation of marijuana during a dry summer; (3) he had marked a trail by painting small trees, the purpose of the trail being to assist him in locating his marijuana crop; (4) he carried a firearm; (5) he had placed booby traps in areas where he was alleged to be cultivating marijuana; and (6) his sole source of income was derived from the cultivation of marijuana.

{¶ 29} In spite of the fact that the police clearly believed that appellant was growing marijuana, the word marijuana does not appear in the portion of the

search warrant describing the property to be searched for and seized. Instead, the warrant authorized police officers to seize "[a]ny drug processing, making, manufacturing, producing, transporting, delivering, processing, storing, distributing, selling, using, or other-wise dealing with a controlled substance, and all other fruits and instrumentalities of the crime at the present time unknown." It further provided for the seizure of "any and all evidence pertaining to violations of the drug laws of the State of Ohio; Ohio Revised Code, and all other fruits and instrumentalities of the crime at the present time unknown."

{¶ 30} Again, the standard set forth by the Supreme Court of Ohio in *Benner*, 40 Ohio St.3d at 307, 533 N.E.2d 701, for the determination of whether a search warrant was sufficiently specific was whether a warrant could reasonably have described the items to be seized more precisely than it did. Here, the officer had reason to believe that appellant was cultivating marijuana for sale. Instead of narrowly tailoring the search warrants to provide for the seizure of items related to the cultivation and sale of marijuana, the scope of the warrant was so broad that it permitted police officers to seize any evidence relating to a violation of the drug laws of Ohio. This court views this laundry list approach to search warrants as an unacceptable impingement upon an individual's Fourth Amendment rights. Therefore, appellant's second assignment of error is well taken.

{¶ 31} In his third assignment of error, appellant avers that the affidavit attached to the July 7 warrant was inadequate for the purpose of establishing probable cause. In that affidavit, the sole fact of which the Portage County Sheriff's Office had firsthand knowledge was that orange-painted trees were found behind appellant's residence as well as "materials used to cultivate marijuana." The rest of the information contained in the affidavit was generated by confidential sources. The affidavit contained no mention of the informant's or informants' reliability or propensity for veracity.

{¶ 32} The Supreme Court of Ohio has held:

{¶ 33} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of syllabus, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238–239, 103 S.Ct. 2317, 76 L.Ed.2d 527; see, also, *State v. Swearingen* (1999), 131 Ohio App.3d 124, 128, 721 N.E.2d 1097.

{¶ 34} Similarly, Crim.R. 41(C) provides that "[t]he finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial

basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."

{¶ 35} Although the United States Supreme Court, in *Illinois v. Gates* (1983), 462 U.S. 213, 233, 103 S.Ct. 2317, 76 L.Ed.2d 527, abandoned the two-pronged test for probable cause for issuance of a search warrant set forth in *Aguilar v. Texas* (1964), 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and *Spinelli v. United States* (1969), 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, of (1) revealing the informant's basis of knowledge, and (2) providing sufficient facts to establish either the informant's veracity or the reliability of the informant's report, those factors are still "relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability."

{¶ 36} The affidavit attached to the July 7 warrant contains the following statements concerning Doak's sources of information: "[t]he affiant has received information that [appellant] makes frequent trips both in the morning and evening hours * * *"; "[appellant] has been seen making these trips * * *"; "[appellant] is commonly known to carry a firearm on his side during these trips * * *"; "[a]ccording to confidential sources, this individual has not worked * * * for several years"; "[t]he Portage County Sheriff's Office has received information that the cultivation of marijuana is [appellant's] only source of income"; and "[w]e have received information in the past and currently know that [appellant] is known to booby trap the areas where he cultivates his marijuana." Nowhere does the affidavit suggest that this information was received from reliable sources. In fact, much of the information provided in the affidavit is not even attributed to a particular source or to particular sources.

{¶ 37} In view of the complete absence of any indication of the reliability of the sources that provided Doak with the information concerning appellant's activities outlined in the affidavit, the affidavit failed to establish probable cause for the issuance of a search warrant, and appellant's third assignment of error is well taken.

{¶ 38} In his fourth assignment of error, appellant asserts that the affidavit submitted with the July 15 search warrant failed to establish probable cause for the issuance of that warrant. Because the affidavit attached to the July 15 warrant was premised, in part, upon the evidence seized in the course of the search conducted on July 8, we must first address the issue of the application of the "good faith exception" to the exclusionary rule to the July 8 search to determine if the magistrate could consider the evidence seized in the course of

the first search in analyzing the validity of the second search warrant issued on July 15. Evidence seized during an unlawful search cannot constitute proof against the victim of the search; therefore, if the first search was unlawful, the evidence seized in the course of that search could not be used to support the issuance of the second search warrant. *Wong Sun v. United States* (1963), 371 U.S. 471, 484, 83 S.Ct. 407, 9 L.Ed.2d 441.

{¶ 39} The good faith exception to the exclusionary rule permits the introduction of evidence obtained by officers who reasonably relied on a search warrant issued by a neutral and detached magistrate, which warrant was ultimately found to be unsupported by probable cause. *George*, 45 Ohio St.3d 325, 330, 544 N.E.2d 640, citing *United States v. Leon* (1984), 468 U.S. 897, 918–923, 104 S.Ct. 3430, 82 L.Ed.2d 677; *State v. Hawkins* (1997), 120 Ohio App.3d 277, 281, 697 N.E.2d 1045. However, there are several circumstances in which the good faith exception is not applicable. One of those is if "the officer should have known that the warrant was based on information so lacking in indicia of probable cause that reliance on its validity would be unreasonable." *Swearingen*, 131 Ohio App.3d at 132, 721 N.E.2d 1097. The inquiry is whether a reasonably well-trained officer would have known that the search was illegal in spite of the magistrate's approval of the warrant. Id.

{¶ 40} Here, the blank affidavit form used by Doak contains instructions to "list all the information concerning the * * * name or names of all informants and your reasons for knowing that such informant is reliable." Contrary to the instructions contained on the form that he completed, Doak provided no information about his informants or their reliability. In short, the necessity of addressing the reliability of informants is not an obscure, highly technical aspect of the warrant process. On the contrary, it is a basic element of the process of preparing an affidavit-so basic, in fact, that it appears on the blank forms used by the Portage County Sheriff's Department. Therefore, we hold that a well-trained officer would have known that the search was illegal because the affidavit failed to address the issue of the reliability and veracity of the informants, and that the good faith exception to the exclusionary rule does not apply to the suppression of the evidence obtained as a result of the unlawful July 8 search. This is particularly apt in this case since Doak was both the affiant and the officer who served the warrant. Because the exclusionary rule applies not only to evidence obtained directly as the result of an unlawful search, but also to evidence obtained as an indirect result of an earlier unlawful seizure, references to the contraband seized on July 8 could not support a determination of probable cause. *State v. Carter* (1994), 69 Ohio St.3d 57, 66–67, 630 N.E.2d 355.

{¶ 41} In the July 15 affidavit, the affiant, Doak, repeated much of the information contained in the July 7 warrant. For the reasons stated previously

with respect to the absence of a statement regarding the reliability of Doak's informants, that information is not sufficient to establish probable cause. The July 15 affidavit also referenced the contraband seized in the course of the July 8 search of appellant's residence.

{¶ 42} Apart from its repetition of the information contained in the July 7 affidavit and its reference to the property seized in the July 8 search, the July 15 affidavit also noted the following: "[affiant] received information from another law enforcement agency that [the Portage County Sheriff's Office] had missed monies that were buried behind [appellant's] residence[;]" affiant also "received information from an officer of the Hiram Police Department in regards to [appellant] burying guns on [his] property[;]" a local farmer provided information that appellant made frequent trips into the woods; the same farmer found a shed on his property, where appellant allegedly dried his marijuana crop, and killed several marijuana plants at that location.

{¶ 43} Once again, the affidavit fails to provide any indicia as to the veracity or reliability of the informants who supplied the information upon which the affiant relied. The affidavit indicates that information was received from an unnamed law enforcement agency and from the Hiram Police Department. However, it does not indicate that that information was derived from the first-hand observations of law enforcement officers, and such first-hand observations by law enforcement officers of appellant's burying guns or money on his property seems improbable at best. In the absence of indications to the contrary, we must presume that those agencies received the information from unnamed informants. Filtering the hearsay statement of an informant through a law enforcement agency establishes neither the truth of the statement nor the reliability of the informant. Regardless of the unimpeachable integrity of the conduit through which an informant's statement is received, the affiant must still provide an indication of the informant's reliability. Because there was no statement of the informant's or informants' reliability with respect to the information in the July 15 affidavit provided by the two law enforcement agencies, that information could not establish probable cause for the issuance of a search warrant.

{¶ 44} What remains of the July 15 affidavit is a statement by an unnamed local farmer who had found a half-built shed on his property. The affidavit also suggests that the unnamed farmer killed several marijuana plants in the vicinity of the shed, although the affidavit is ambiguous as to the exact location at which the plants were found. The affidavit further provides that the shed was used by appellant for drying his marijuana crop, but there is no assertion in the affidavit that anyone had seen appellant at the site of the shed or that anyone had seen appellant engaged in the process of drying a marijuana crop, only that the farmer had seen appellant making frequent trips into the woods.

{¶ 45} Once again, the affidavit contains no statement as to that local farmer's reliability or veracity. Apart from the issue of the reliability of the informant, the information he provided does not meet the totality-of-the-circumstances test, which requires a magistrate to make a common-sense decision whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. *George,* 45 Ohio St.3d 325, 544 N.E.2d 640, at paragraph one of the syllabus.

{¶ 46} Here, marijuana plants were found near a shed on property that belonged to a local farmer. Although appellant was seen entering the woods, there is no statement attributed to any witness connecting appellant to the shed. The affidavit reads, "Information was also received that [the local farmer] located a half built shed that was used for drying purposes on or about his property. The [local] farmer has killed several marijuana plants where [appellant] would dry his crop." The fact that appellant allegedly dried his crop in the shed is not attributed to any source. It appears to simply be an assumption made by the affiant. Further, there is no statement indicating where appellant's residence was located in relation to this local farmer's property, or that appellant was ever seen on the local farmer's property. Appellant was seen making trips "into the woods," but the location of those woods is similarly vague. The underlying circumstances of a local farmer finding marijuana plants on his property and appellant being seen entering the woods somewhere in the vicinity of that property are an insufficient factual predicate to support the conclusion that the marijuana was grown by appellant.

{¶ 47} Based on the foregoing, we conclude that the July 15 affidavit did not contain sufficient probable cause to support the issuance of a search warrant. Consequently, appellant's fourth assignment of error is well taken.

{¶ 48} In his fifth assignment of error, appellant argues that the good faith exception to the exclusionary rule does not apply to either search. With respect to the July 8 search, we have already addressed this issue in our treatment of appellant's fourth assignment of error. The same analysis is largely applicable to the July 15 search since, in the affidavit submitted in support of that warrant, Doak, as the affiant, failed to provide any statement as to the veracity or reliability of his various informants.

{¶ 49} While we agree with the state's suggestion that the inadequacies to be found in the July 15 affidavit do not negate the executing officers' good-faith belief that they were following the dictates of the law, the inquiry is not simply whether the officers thought they were doing the right thing, but whether a reasonably well-trained officer would have known that the search was illegal. *Swearingen,* 131 Ohio App.3d at 132, 721 N.E.2d 1097. In *Swearingen,* the Third Appellate District held that a reasonably well-trained officer could not rely on the

warrant in that case "because the affidavit and oral testimony used to procure the warrant were so lacking in indicia of probable cause that it rendered official belief in its existence entirely unreasonable." Id. In the case sub judice, a brief perusal of the affidavit would suffice for an officer to realize that the issue of the informants' reliability had not been addressed. Just as a brief perusal of the boilerplate language contained in the same affidavit indicates that such a statement of informant reliability is a necessity. Therefore, appellant's fifth assignment of error is well taken.

{¶ 50}  For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is reversed, and the matter is remanded for further proceedings consistent with this opinion. The evidence seized pursuant to the two search warrants from the property on which appellant resided should have been suppressed. The issue as to the admissibility of evidence seized from neighboring properties is not before us. Appellant could not have any expectation of privacy with respect to property of which he was neither the owner nor the leaseholder. *Mentor v. Schivitz* (Dec. 22, 2000), 11th Dist. No. 99–L–153, 2000 WL 1876508, at * 2.

Judgment reversed
and cause remanded.

ROBERT A. NADER, J., concurs.

DIANE V. GRENDELL, J., concurs in part and dissents in part.

DIANE V. Grendell, Judge, concurring in part and dissenting in part.

{¶ 51}  I concur with the majority's denial of appellant's first assignment of error. However, I respectfully dissent from the remainder of the majority's opinion for the reasons stated below.

{¶ 52}  With respect to appellant's second assignment of error, the majority characterizes the search warrants in this case as a "laundry list approach" and finds them "an unacceptable infringement upon an individual's Fourth Amendment rights." I disagree. As noted in my dissenting opinion in *State v. Young* (2001), 146 Ohio App.3d 245, 765 N.E.2d 938, a sharpshooter test for the content of a search warrant in drug cases establishes an unrealistically stringent and constitutionally unwarranted drafting standard.

{¶ 53}  In this case, the warrants set forth a lengthy and detailed description of the contraband items to be seized. These items are specific things used or involved in the marijuana/drug trafficking trade. Read in conjunction with the supporting affidavits, the warrants authorize the search for, and seizure of, specific marijuana/drug-trafficking-related materials (e.g., growing devices, chem-

icals, pots, illegal drugs, packaging equipment, monies, sale records and other drug paraphernalia). Such specificity does *not* constitute a "general search" feared by our Founding Fathers and precluded by the Fourth Amendment.

{¶ 54} Moreover, a search warrant must be considered in its totality. While a cellular phone or pager, standing alone, has no criminal or contraband implications, listing them alongside a large quantity of marijuana, a scale, plastic bags, growing lights, and money cloaks such items with a criminal purpose and demonstrates the existence of illicit narcotic activity. As a result of the above-mentioned items, a substantial basis was formed to support the judge's issuance of the warrants in this case. Id. So long as the law enforcement officers in this case could distinguish between legal and illegal property on the basis of objective, articulable standards, search warrants may authorize the search of the premises for an otherwise generic class of items relating to illicit narcotic activity, without violating the constitutional prohibition against general warrants. *United States v. Upton* (S.D.Ohio 1991), 763 F.Supp. 232, 238.

{¶ 55} In this matter, the search warrants contained sufficient specificity and objective information for trained law enforcement personnel to search the premises for illegal contraband used in drug trafficking and to know the permissible objects of such search.

{¶ 56} For these reasons, appellant's second assignment of error should be overruled.

{¶ 57} The majority also concludes that there is a "complete absence of any indication of reliability" as to the sources that provided the detective with information as outlined in the supporting affidavit. Based on this conclusion, the majority finds appellant's third assignment of error well taken. I disagree.

{¶ 58} First, an appellate court must always be cognizant of its limitations in reviewing the sufficiency of probable cause determination involving an affidavit submitted in support of a search warrant. Neither a trial court nor an appellate court should substitute its judgment for that of a magistrate and conduct a de novo review as to whether the affidavit contains probable cause sufficient for the issuance of a search warrant. *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph two of the syllabus. The issue on review is limited to the determination as to whether the magistrate had a substantial basis for concluding that probable cause existed.

{¶ 59} In this case, appellant asserts that the affidavit attached to the July 7th warrant was inadequate for the purpose of establishing probable cause. The majority agrees with this assertion primarily because of its view that "much of the information provided in the affidavit is not even attributed to a particular source or to particular sources."

{¶ 60} The proscriptions of the Fourth Amendment impose a standard of reasonableness upon the exercise of discretion by government officials. *Delaware v. Prouse* (1979), 440 U.S. 648, 653–654, 99 S.Ct. 1391, 59 L.Ed.2d 660. "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." Id. at 654, 99 S.Ct. 1391, 59 L.Ed.2d 660. To justify a particular intrusion, the officer must demonstrate "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶ 61} When, as in this case, a law enforcement official acts on an informant's tip, the appropriate analysis is whether that tip has sufficient indicia of reliability. *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 720 N.E.2d 507. The factors to be considered are the informant's veracity, reliability, and basis of knowledge. *Alabama v. White* (1990), 496 U.S. 325, 328, 110 S.Ct. 2412, 110 L.Ed.2d 301.

{¶ 62} In assessing these factors, the Supreme Court of Ohio has categorized informants based upon typical characteristics. *Maumee v. Weisner,* supra, at 300–302, 720 N.E.2d 507. In this case, the category of the "anonymous informant" is relevant to appellant's third assignment of error. The anonymous informant category arguably is applicable in this case because the affidavit, attached to the July 7th warrant, references "received information" and "confidential sources," but does not specifically identify the name of such sources or the particular source of such information.

{¶ 63} Accepting for the sake of this discussion that the absence of such identifying information in the affidavit effectively renders such sources "anonymous informants" for purposes of appellate legal analysis, the reliability of the information provided by those sources generally requires some independent police corroboration. See *White,* supra; *Weisner,* supra. Such corroboration can be found in the record in this case. The first affidavit in this matter, compiled from some first-hand information supplied from the Portage County Sheriff's personnel, establishes that trail markings, often related to hidden marijuana growing sites, and various materials used to cultivate marijuana, were located on appellant's property. As a result, the corroborated facts, and outlined in the affidavits, taken in their totality, and made known to the issuing judge, were sufficient to establish the following: (1) probable cause that appellant was cultivating marijuana for sale on appellant's property and (2) a fair probability that contraband would be found on appellant's property. *George,* supra. Therefore, appellant's third assignment of error should be overruled.

{¶ 64} Since appellant's fourth and fifth assignments or error are somewhat interrelated, they will be addressed collectively.

{¶ 65} Appellant argues that the affidavit supporting the July 15th search warrant was premised on allegedly unlawfully obtained evidence, was based on unreliable information, and was not subject to the "good faith exception" to the exclusionary rule with respect to information obtained from the July 8th search. The lower court found "sufficient probable cause for the issuance of the July 15th search warrant" and "that even if the affidavit failed to provide sufficient probable cause, the search warrant would fall within the 'good faith exception.'" I agree.

{¶ 66} The majority concludes that the good faith exception does not apply in this case because the affidavit form used by Detective Doak was not completely filled out. This conclusion hinges too much on form over substance. As previously discussed, based on the totality of the circumstances and the corroborative information provided to the issuing judge, the issues of the reliability and veracity of the informant's affidavit have been sufficiently addressed. Leaving some unfilled blanks on the form of an affidavit does not change this substantive fact. The facts of this case do warrant the application of the good faith exception under *United States v. Leon* (1984), 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. Moreover, for the reasons discussed above, the first search was legal. Likewise, the information in the second affidavit passes the reliability test, as discussed below, regardless of the "blanks." Therefore, the affidavit supporting the July 15th search was valid either on its face or under the good faith exception.

{¶ 67} As to the reliability of the information in the July 15th affidavit, there are sufficient indicia of probable cause to render reliance on that affidavit and related search warrant reasonable. Once again, there is corroboration of the unnamed source information by reliable police sources. The majority's standard of review for the search warrant affidavit is so strict that such affidavits apparently would be valid only if the name of every source is identified and those sources said that they personally observed the criminal act in progress. Such a standard is impractical and is contrary to the Ohio Supreme Court's acceptance of the reliability of corroborated, anonymous sources. See *Weisner*, supra.

{¶ 68} A witness does not have to see someone bite off another's ear to testify against the biter. It is sufficient that the witness merely sees the biter spit out the ear to give credibility to the witness's testimony. The same is true in this case. While neither the local farmer nor law enforcement personnel said they observed appellant physically planting and cultivating marijuana, appellant was observed carting large volumes of water to the area where marijuana plants were subsequently found to be growing. Moreover, the July 15th affidavit included information from the Hiram Police Department regarding appellant's burying of guns on the property, as well as evidence that the area was booby-trapped. Such conduct provides indicia of illicit drug activity.

{¶ 69} Faced with this evidence, reversal of the lower court's finding of probable cause for the issuance of the July 15th warrant would be improper and in violation of the appellate court mantra of judicial restraint. For these reasons, appellant's fourth and fifth assignments of error should be overruled.

{¶ 70} Finally, the majority addresses appellee's argument that appellant never challenged the sufficiency of the search warrants in the proceedings and dismisses this argument on the basis of waiver. Without agreeing or disagreeing with the majority on this issue, I would affirm the lower court's ruling on the substantive grounds discussed above, without the need to address appellee's "no challenge" issue.

{¶ 71} With all due respect to the majority, I would affirm the lower court's decision in this matter for the reasons stated above.