The STATE of Ohio, Plaintiff,

v.

GREVAS, Defendant.

2007-Ohio-7258.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2007 CR 0388.

Decided Oct. 18, 2007.

26

28

Donald W. White, Clermont County Prosecuting Attorney, and Scott Smith, Assistant Prosecuting Attorney, for plaintiff.

Mark Tekulve, for defendant.

HADDAD, Judge.

{¶ 1} This matter came before the court on September 17, 2007, pursuant to a motion to suppress. Upon hearing oral arguments on the motion, the court took the matter under advisement and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} On May 3, 2007, at approximately 3:00 a.m., the defendant and a codefendant, Brandon Royse, were accused of breaking into the home of William Combs. The defendant and Royse allegedly assaulted Combs and proceeded to take his wallet, four shotguns, and two prescription bottles from his home.

{¶ 3} On May 5, 2007, Detective Jeff Lacey of the Goshen Township Police Department applied for a warrant to search the premises of 6371 Belfast Road,

Goshen, Ohio, the address where the defendant resided, further described as a double-wide, tan in color, with a detached garage off the north side of the driveway. Included in the warrant was a green 1996 Jeep Cherokee. The warrant was accompanied by an affidavit drafted by Detective Lacey. The warrant was issued, and Detective Lacey served the warrant on May 5, 2007, at approximately 2:00 a.m.[1] Among the items recovered by Detective Lacey as a result of the search were a prescription bottle with no label, found in the defendant's bedroom, and a prescription bottle with no label enclosed within a metal container, found in the defendant's home. Additionally, Officer Bucksath of the Goshen Township Police Department found a 7.5 French Max shotgun in a shed behind the house.[2] After learning that Officer Bucksath had found the shotgun, Corporal Robinson of the Goshen Township Police Department arrested the defendant. Corporal Robinson testified that the defendant was *Mirandized* after being placed under arrest, but was not certain whether he recited the defendant's rights on the front porch or when he placed the defendant into the police cruiser.

{¶ 4} The state filed an indictment on May 9, 2007, charging the defendant with two counts of aggravated burglary, two counts of aggravated robbery, two counts of felonious assault, one count of intimidation of attorney, victim, or witness in a criminal case, one count of grand theft, and one count of theft of drugs. On August 1, 2007, the defendant filed a motion to suppress the evidence obtained during the May 5 search of 6371 Belfast Road because the evidence had been illegally obtained. Further, the defendant alleges that any statements that the state intends to use against him should be suppressed because there were no reasonable grounds for the detention of the defendant, and the questioning was otherwise illegal.

{¶ 5} At the suppression hearing on September 17, 2007, the defendant first challenged the search of his home. The defendant presented evidence that the two prescription bottles found inside the home were unmarked; therefore, the defendant argued that this seizure of them violated the search warrant, which allowed only prescription bottles bearing the name of William Combs to be seized. Further, the defendant presented evidence that the 7.5 French Max

---

1. The court notes that the defendant resided at 6371 Belfast Road, Goshen, Ohio, with his father, James Grevas. The defendant's girlfriend was also present at the residence on the night in question.

2. The property to be searched for and seized was described as "four long barrel shotguns, prescription medication with William Combs name on the bottle, wallet with the identification of William Combs. The aforementioned shotguns include a double barrel 12 gauge shotgun, a New England 20 gauge shotgun, a 12 gauge shotgun with the letters 'Riot Barrel' on the barrel, and on 7.5 French Max."

shotgun was recovered in a shed located behind his home. The defendant contended that this shed could not legally be searched pursuant to the search warrant because the warrant failed to include the shed in the property description. The defendant next argued that *Miranda* was not properly given once the defendant was placed in custody. The defendant further asserted that he was under the influence of drugs or alcohol at the time he was *Mirandized*, and thus he was unable to understand the *Miranda* warnings.

## LEGAL ANALYSIS

{¶ 6} The defendant argues that Officer Bucksath's search of the shed located behind the defendant's home was illegal because it was not included in the search warrant's description as a place to be searched. The warrant obtained by Detective Lacey in this case contained the address of the defendant's residence, 6371 Belfast Road, Goshen, Ohio, and it did not specifically refer to the shed or the curtilage of the residence. The warrant describes the place to be searched as "the premises known as: 6371 Belfast Road, Goshen, Ohio 45122, further described as a doublewide tan in color, with a detached garage off the north side of the driveway. [T]o include a 1996 Jeep Cherokee, green bearing tag number DYS2005." [3]

{¶ 7} "A search warrant * * * shall show or recite all the material facts alleged in the affidavit, and particularly name or describe the property to be searched for and seized, the place to be searched, and the person to be searched." R.C. 2933.24(A). "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." *State v. Pruitt* (1994), 97 Ohio App.3d 258, 261, 646 N.E.2d 547, quoting *Steele v. United States* (1925), 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757, 760. The standard is reasonableness. Id. Further, in Ohio, the curtilage is inseparable for privacy purposes from a residence identified in a search warrant. *State v. Dalpiaz*, 151 Ohio App.3d 257, 2002-Ohio-7346, 783 N.E.2d 976, ¶ 18, citing *United States v. Gorman* (C.A.9, 1996), 104 F.3d 272, 275. "It seems logical and reasonable that a search warrant that authorizes intrusion on this greater area of privacy would include authorization for intrusion in the lesser area of privacy, the backyard." Id. at 264, 2002-Ohio-7346, 783 N.E.2d 976, citing *Gorman* and *United States v. Brown* (M.D.Ga.1993), 822 F.Supp. 750, 754. Therefore, the residential address provided in a search warrant implicitly includes the curtilage of the residence. Id.

---

3. State's Exhibit 2, Search Warrant.

{¶ 8} Curtilage is the area "so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *State v. Payne* (1995), 104 Ohio App.3d 364, 368, 662 N.E.2d 60, quoting *United States v. Dunn* (1987), 480 U.S. 294, 301, 107 S.Ct. 1134, 1140, 94 L.Ed.2d 326, 335. Whether an area falls within a home's curtilage should be resolved by the following factors: "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." *Dunn*, 480 U.S. at 301, 107 S.Ct. 1134, 94 L.Ed.2d 326. These factors are merely analytical tools that bear on the ultimate question whether the area is so intimately tied to the home that it should be covered under the home's "umbrella" of Fourth Amendment protection. Id.

{¶ 9} First, Detective Lacey testified that the shed is located approximately 20 to 30 feet from the back of the defendant's home, and to the right of the shed is a playhouse.[4] The proximity of the shed to the house, as well as the fact that a playhouse is located in the same vicinity, indicates to the court that this area is intimately tied to the home. Detective Lacey testified that he also performed a visual inspection of the interior of the playhouse from outside. Second, there is no evidence in the record to indicate that the defendant's home or any portion of his property is surrounded by a fence or other enclosure. The court finds that because there is no fence around the home, it is impossible that the shed could be located within the same enclosure as the home. Therefore, the second factor is irrelevant to the court's analysis. Third, there is no evidence in the record to indicate that this shed is being used for anything other than storage. Storing one's personal effects is associated with the activities and privacies of domestic life; therefore, the storage shed should be deemed to be part of the defendant's home. Fourth, the storage shed was constructed behind the defendant's home, away from the view of the general public. Further, testimony indicated that there is a door on the shed, even though it was open on the night in question. This indicates to the court that the defendant's intention was to prevent persons from observing the shed and its contents.

{¶ 10} Based upon the foregoing analysis, the court finds that the shed in question is located within the curtilage of the defendant's home. The defendant has failed to present evidence to the court to indicate that this shed was not part of the curtilage of the residence. Further, the defendant's argument that this area was outside the warrant indicates to the court that the defendant does in

---

4. See Defendant's Exhibit A, Detective Lacey's illustration of the premises.

fact believe that the shed is located within the curtilage of the home and should be afforded Fourth Amendment protection.

{¶ 11} The court finds, pursuant to *State v. Dalpiaz,* that the language in the warrant describing the premises to be searched implicitly includes the curtilage of the home. Further, the language of the warrant implicitly permitted the search of the shed because there is uncontroverted evidence that the shed is located within the curtilage of the home. Therefore, the court denies the defendant's motion to suppress the evidence found in the shed, i.e., the 7.5 French Max shotgun.[5]

{¶ 12} The defendant also argues that the two prescription bottles found inside the residence should be suppressed because those bottles were not particularly described in the search warrant. The warrant describes the evidence to be seized as prescription medication with William Combs's name on the bottle. The affidavit for the warrant further provides that the prescription bottles to be seized contained OxyContin and Xanax. The bottles seized by the police in this case were not labeled, and Detective Lacey testified that he was uncertain as to the contents of the bottles at the time of the search. Therefore, the defendant argues that the detective's seizure of these bottles was in violation of the search warrant and was thus illegal.

■■ {¶ 13} The search warrant in this case authorized the officer's to search the premises for "prescription medication with William Combs name on the bottle." The officers discovered the prescription bottles in this case while searching for the prescription bottles bearing the name of William Combs. "The plain view exception authorizes the seizure of illegal objects or contraband, regardless of the existence of a warrant, if the initial intrusion leading to the items' discovery was lawful and the incriminating or illegal nature of the items was 'immediately apparent.'" *State v. Landis,* Butler App. No. CA2005–10–428, 2006-Ohio-3538, 2006 WL 1880495, ¶ 29, citing *State v. Lovett,* Greene App. No. 2004 CA 117, 2005-Ohio-4601, 2005 WL 2106709, and *Horton v. California* (1990), 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112. The "immediately apparent" requirement is satisfied "when police have probable cause to associate an object with criminal activity." Id., citing *State v. Spence,* Butler App. No. CA2002–05–107, 2003-Ohio-4237, 2003 WL 21904788, ¶ 38. "The requisite probable cause may arise from the character of the property itself or the circumstances in which it is discovered, and police officers may rely on their specialized knowledge, training, and experience in establishing probable cause to identify items as contraband."

---

5. Although the evidence will not be suppressed, the court notes that the better practice would have been to clearly specify in the warrant whether the entire premises, including the curtilage and outbuildings, were subject to the search.

Id., citing *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 304–305, 25 OBR 360, 496 N.E.2d 925.

{¶ 14} The court finds that the plain-view exception is clearly satisfied in this case. The officers had a valid search warrant to search the premises for prescription bottles bearing the name of William Combs. This warrant authorized the officers to "open closets, chests, drawers, and containers" in which the evidence might be found. *State v. Simmons*, Warren App. No. CA2004–11–138, 2005-Ohio-7036, 2005 WL 3588433, ¶ 17. The initial intrusion leading to the items' discovery was lawful in that the search warrant authorized the officers to search the premises for the victim's prescriptions. The officers were performing this search when the prescription bottles in question were found. Further, the incriminating or illegal nature of the items was "immediately apparent." The officers had to look at any prescription bottle found to determine whether the label contained the name of William Combs. The courts have held that the requisite probable cause may arise from the character of the property itself or the circumstances in which it is discovered. The character of the property was such that the prescription bottles were not labeled with the defendant's name. A prescription bottle bearing anything other than the defendant's name would indicate that the defendant is in possession of drugs belonging to someone other than himself. The court finds that this circumstance gave the officer the requisite probable cause to seize the prescription bottles; therefore, the defendant's motion to suppress the prescription bottles is denied.

{¶ 15} The defendant's next argument is that any statement made by him should be suppressed because *Miranda* warnings were not given. The defendant further argues that if *Miranda* was in fact given, he could not understand the *Miranda* warnings because he was under the influence of drugs or alcohol at the time. The court finds that the state's burden of proof at a suppression hearing is by a preponderance of the evidence. *State v. Miles*, Butler App. No. CA2002–06–149, 2003-Ohio-7209, 2003 WL 23095408, ¶ 13. Therefore, the burden is on the state to prove by a preponderance of the evidence that the defendant was given his *Miranda* warnings. See *State v. Benson*, Cuyahoga App. No. 87655, 2007-Ohio-830, 2007 WL 613994, ¶ 65; *State v. Ready* (2001), 143 Ohio App.3d 748, 757, 758 N.E.2d 1203. Preponderance of the evidence simply means the "greater weight of evidence." *State v. Stumpf* (1987), 32 Ohio St.3d 95, 102, 512 N.E.2d 598, quoting *Travelers' Ins. Co. v. Gath* (1928), 118 Ohio St. 257, 261, 160 N.E. 710. Further, *Miranda* does not require a "talismanic incantation" of the specific *Miranda* warnings. *Benson*, 2007-Ohio-830, 2007 WL 613994, at ¶ 65, citing *California v. Prysock* (1981), 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696.

34

{¶ 16} *Miranda* provides that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona* (1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. "Police are not required to administer *Miranda* warnings to everyone whom they question." *State v. Biros* (1997), 78 Ohio St.3d 426, 440, 678 N.E.2d 891, citing *Oregon v. Mathiason* (1977), 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714, 719. "*Miranda* was not intended to hamper the ability of law enforcement officers to legitimately investigate crimes." *State v. Johnson* (May 1, 2000), Clermont App. No. CA99–06–061, 2000 WL 525671, at 3. Questioning of person at the scene of a possible crime ordinarily does not fall within the ambit of custodial interrogation. Id. This includes roadside questioning of motorists detained for purposes of a routine traffic stop. Id., citing *Berkemer v. McCarty* (1984), 468 U.S. 420, 437–439, 104 S.Ct. 3138, 82 L.Ed.2d 317. Where the suspect is not in custody, the fact that an officer may consciously seek to elicit incriminating statements, even where the suspect is the focus of the investigation, does not necessarily entitle the suspect to a *Miranda* warning. Id., citing *Minnesota v. Murphy* (1984), 465 U.S. 420, 431, 104 S.Ct. 1136, 79 L.Ed.2d 409. But once the suspect is placed under arrest or taken into the equivalent of custody, a *Miranda* warning is required. Id., citing *Berkemer*, 468 U.S. at 440, 104 S.Ct. 3138, 82 L.Ed.2d 317. "Only *custodial* interrogation triggers the need for *Miranda* warnings." *Biros*, 78 Ohio St.3d at 440, 678 N.E.2d 891.

{¶ 17} Furthermore, neither an officer's subjective intent nor the defendant's subjective beliefs are relevant to this analysis. *State v. Estepp* (Nov. 26, 1997), Montgomery App. No. 16279, 1997 WL 736501, at 4. *Estepp* suggested that the following factors should be considered when determining whether an individual is in custody: (1) the location where the questioning took place, i.e., was the defendant comfortable and in a place a person would normally feel free to leave, (2) whether the defendant was a suspect when the interview began, (3) whether the defendant's freedom to leave was restricted in any way, (4) whether the defendant was handcuffed or told he was under arrest, (5) whether threats were made during the interrogation, (6) whether the defendant was physically intimidated during the interrogation, (7) whether the police verbally dominated the interrogation, (8) the defendant's purpose for being at the place where the questioning took place, (9) whether neutral parties were present during the questioning, and (10) whether the police took any action to overpower, trick, or coerce the defendant into making a statement. Id. at 4.

{¶ 18} Further, Ohio courts have held that *Miranda* warnings are not required in some environments that are much more restrictive than the environment in which the defendant was questioned. For example, in *State v. Ready*, 143 Ohio App.3d 748, 758 N.E.2d 1203, the defendant voluntarily appeared at the police station to answer questions regarding a fraudulent credit purchase. The court found that " 'the fact that a suspect is being interviewed at a police station does not, per se, require a Miranda rights warning.' " *Ready*, 143 Ohio App.3d at 757, 758 N.E.2d 1203, quoting *State v. Mason* (1998), 82 Ohio St.3d 144, 154, 694 N.E.2d 932. The court held that the defendant had not been in custody when the questioning occurred, and thus *Miranda* was not required. This court notes that the case before it is significantly different from *Ready* in that the defendant was questioned at his own home, in a less restrictive and more comfortable environment than was the defendant in that case.

{¶ 19} The court finds that the defendant was not in custody at the time Corporal Robinson initially questioned him. The questioning took place at the defendant's own home, where he was comfortable and a person would normally feel free to leave. There is no testimony before the court to indicate that the defendant's freedom to leave was restricted in any way. He was not handcuffed at the time of the initial questioning and was not told that he was under arrest. Further, there is no evidence that there were threats made during the interrogation or that the defendant was physically intimated in any way. The evidence indicates that there were at least two neutral parties present during the questioning, i.e., the defendant's father and the defendant's girlfriend. Finally, there is no evidence that the police took any action to overpower, trick, or coerce the defendant into making a statement during the initial questioning. Therefore, based upon the totality of the circumstances, the court finds that the defendant was not in custody during the initial questioning and prior to the officers' finding the shotgun on the property. Because *Miranda* applies only to custodial interrogation, the officer was not required to read the defendant his *Miranda* rights during the initial questioning.

{¶ 20} The defendant in this case was not in custody until the officer placed him under formal arrest following the discovery of the shotgun in the shed and the medication in the house. It was not until the defendant was placed in custody that the officer was required to inform the defendant of his *Miranda* rights. There is uncontroverted testimony before the court that Corporal Robinson recited the defendant's rights after the defendant was formally arrested. The court finds that Corporal Robinson fully complied with *Miranda* when he recited the defendant's rights after his arrest.

{¶ 21} The defendant further argues that even if the court found that *Miranda* warnings were in fact given, the defendant did not understand his rights because he was under the influence of drugs or alcohol. "It is fundamental

that the weight of the evidence and credibility of [the] witness are primarily for the trier of the facts." *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. This principle is applicable to suppression hearings as well as trials. Id. Corporal Robinson testified that the defendant was in bed at the time the warrant was executed. He further testified that he had personally entered the defendant's bedroom to question him and that the defendant was in bed asleep. When asked about the defendant's physical condition, Corporal Robinson responded that the defendant appeared to be tired. He admitted that the defendant might have been drinking earlier that night, but he had encounters with him in the past when he had been intoxicated, and on this night, the defendant was certainly not intoxicated. He testified that the defendant was coherent and responded clearly to the questions he was asked.

{¶ 22} The state presented additional evidence in the form of a videocassette recording made at the scene on the night in question.[6] The defendant argued that Corporal Robinson commented to the defendant on the recording that the defendant was "not in the greatest shape right now." The defendant contended that this statement referred to his mental state, i.e., that he was intoxicated. However, the court finds no evidence that the officer was referring to the defendant's mental state. Another reasonable interpretation is that the defendant was not in the greatest shape in terms of the evidence against him. Further, the court listened to the recording and agrees with Corporal Robinson that the defendant sounded sleepy, as to be expected at 2:00 a.m., but was clearly coherent and was able to respond to the officer's questions. Therefore, the court finds no evidence that the defendant was intoxicated or under the influence of drugs.

{¶ 23} The court finds that based upon the competent, credible evidence before it, Corporal Robinson's initial questioning of the defendant occurred prior to the defendant's being placed in custody. Once the defendant was placed in custody, Corporal Robinson recited the defendant's *Miranda* rights. There is no evidence that the defendant was under the influence of drugs or alcohol and was unable to understand these rights. Therefore, the court denies the defendant's motion to suppress the statements made by the defendant on the night in question.

## CONCLUSION

{¶ 24} Based upon the foregoing analysis and the competent, credible evidence presented, the court finds that the defendant's motion to suppress the evidence

---

6. See State's Exhibit 3. The court notes that this recording was made at approximately 2:00 a.m. on May 5, 2007, and was recorded outdoors; thus the video is very dark. Therefore, only the audio was available for the court's review.

found at his residence, including the prescription bottles and the shotgun, shall be denied. Further, the court finds that the defendant's motion to suppress the statements made by the defendant to the police is also denied.

So ordered.