OPINION
{¶ 1} Appellant, Stanley T. Smith ("Smith"), appeals from the judgment entry of the Ashtabula County Common Pleas Court sentencing him to six years in prison on various drug charges. He argues that the trial court should have suppressed the evidence seized pursuant to a search warrant on the ground that such warrant was illegally obtained. Upon review, we affirm the trial court's judgment.
 {¶ 2} On March 19, 2004, Smith was under indictment for a drug trafficking in another case then pending in Ashtabula County Common Pleas Court. The case was denominated as 03 CR 150.[1] On that date, Detective Scott Daniels ("Daniels") of the Trumbull, Ashtabula, and Geauga Law Enforcement Task Force ("T.A.G.") obtained a search warrant from the Ashtabula County Court, Eastern Division, to search Smith's premises.
 {¶ 3} Paragraphs twenty-one through twenty-five of Daniels' affidavit in support of his request for a search warrant allege that previous controlled buys were made from Smith at his residence in 2002 and that Smith was indicted for drug trafficking as a result of those controlled buys in 2003.
 {¶ 4} Daniels also alleged in his affidavit in support of his request for a search warrant that, during the months prior to March 19, 2004, while Smith was under indictment in case number 03 CR 150 and awaiting trial, Daniels had received reports from members of the community that Smith was still selling methamphetamine.
 {¶ 5} Daniels arranged for a confidential informant to enter Smith's premises on March 19, 2004. According to paragraph twenty-seven of his affidavit, this is what transpired at Smith's residence:
 {¶ 6} "C.S. #2 [confidential informant] went to 1554 Black Sea Rd., Lenox Township, Ashtabula County and met with Stanley T. Smith. At the residence Stanley T. Smith told C.S. #2 that he did not have enough methamphetamine to sell him but to call the house at 5:00 p.m. and he would be told at that time through code whether the meth was present. C.S. #2 also indicated that a female present whispered into his ear that she would have Oxycontin's [sic] available for sale later this evening. C.S. #2 also indicated that he observed several firearms in the residence, which he described as several long guns and an older hand gun."
 {¶ 7} The search conducted by Daniels on March 19, 2004 yielded various handguns, long guns, shotguns, substances that tested positive for methamphetamine, equipment for manufacturing methamphetamine, and other items.
 {¶ 8} Based on the materials found in Smith's residence on March 19, 2004, Smith was indicted by the grand jury on April 19, 2004. He was indicted on Count 1 of the indictment for illegal manufacture of drugs, in violation of R.C. 2925.04(A)(C)(2), a felony of the second degree; on Count 2 for illegal assembly or possession of chemicals for the manufacture of drugs, a violation of R.C. 2925.041(A), a felony of the third degree; on Count 3 for possession of methamphetamine, a violation of R.C.2925.11(A)(C)(1)(a), a felony of the fifth degree; on Count 4 for possession of criminal tools, a violation of R.C. 2923.24(A), a felony of the fifth degree; and on Count 5 for having weapons while under a disability, a violation of R.C. 2923.13(A)(3), a felony of the fifth degree. Smith entered a plea of not guilty to all of the counts of the indictment.
 {¶ 9} On June 11, 2004, Smith filed a motion to suppress the evidence seized in the search conducted on March 19, 2004. The motion asserted that the search warrant was improperly granted, that the search exceeded the scope of the warrant, and that the document reflecting the seized property was improper. The motion was heard by the trial court and denied.
 {¶ 10} The case was tried to the court, without a jury. The trial court found Smith guilty on four of the five counts against him. The trial court found him not guilty on Count 4 of the indictment, relating to possession of criminal tools.
 {¶ 11} On November 17, 2004, the trial court conducted a sentencing hearing. The court sentenced Smith to six years on Count 1 of the indictment, including a mandatory two-year sentence; two years on Count 2; and ten months each on Counts 3 and 5, all sentences to be served concurrently to each other. This sentencing order was filed on November 19, 2004. Thereafter, Smith filed motions to vacate his sentence, to arrest judgment of sentence, and for a new sentencing hearing. The trial court did not rule on these motions. On the same day he filed these motions, Smith filed a timely notice of appeal to this court from the trial court's judgment entry of sentence.
 {¶ 12} In this court, Smith has asserted a single assignment of error:
 {¶ 13} "The Ashtabula County Court of Common Pleas erred to the prejudice of appellant when it overruled his motion to suppress."
 {¶ 14} This assignment of error seeks to test the legal sufficiency of the affidavit for a search warrant offered to the Ashtabula County Court, Eastern Division.
 {¶ 15} Crim.R. 41(C) sets forth the requirements for issuance of a search warrant, in pertinent part:
 {¶ 16} "(C) Issuance and contents. A warrant shall issue under this rule only on an affidavit or affidavits sworn to before a judge of a court of record and establishing the grounds for issuing the warrant. The affidavit shall name or describe the person to be searched or particularly describe the place to be searched, name or describe the property to be searched for and seized, state substantially the offense in relation thereto, and state the factual basis for the affiant's belief that such property is there located. If the judge is satisfied that probable cause for the search exists, he shall issue a warrant identifying the property and naming or describing the person or place to be searched. The finding of probable cause may be based upon hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished. * * *"
 {¶ 17} The test for determining probable cause in an affidavit for a search warrant is set forth in the case of Statev. George:
 {¶ 18} "In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, `[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.' (Illinois v. Gates
(1983), 462 U.S. 213, 238-239, followed.)"[2]
 {¶ 19} This court's standard of review to test the sufficiency of an affidavit in support of a search warrant was enunciated in the second paragraph of the syllabus in the case ofState v. George:
 {¶ 20} "In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. (Illinois v. Gates (1983),462 U.S. 213, followed.)"[3]
 {¶ 21} Smith argues that paragraph twenty-seven of Daniels' affidavit was the only paragraph that could support the search that was conducted on March 19, 2004. Only that paragraph, argues Smith, details circumstances upon which a magistrate could have issued a search warrant; however, the information in that paragraph "depends entirely on the uncorroborated statement of a confidential informant with no facts on which the Ashtabula County Court — Eastern Division could have assessed the credibility, veracity and reliability of the confidential informant." The same paragraph mentions "monitoring and recording" of Smith's conversation, but the recordings were never produced.
 {¶ 22} The uncorroborated statement, argues Smith, pertains both to the drug evidence that was seized as well as to the firearms that were seized. Thus, Smith puts the reliability of the confidential informant in issue, and argues that, for lack of showing of reliability of the confidential informant, the affidavit is deficient.
 {¶ 23} In response, the state of Ohio argues that the affidavit, including paragraph twenty-seven, was factually and legally sufficient to establish probable cause for a search warrant to issue.
 {¶ 24} Factually, the state of Ohio points to the facts expressed in the affidavit: (1) numerous complaints had been received from members of the community that Smith was still selling methamphetamine; (2) Smith was under indictment at the time for trafficking in methamphetamine out of his residence; (3) law enforcement officers had previously made controlled buys of methamphetamine from Smith at his residence; (4) on March 19, 2004, the confidential informant received information from Smith that methamphetamine would be available for purchase at the residence; (5) a female on the premises told the confidential informant that Oxycontin would be available for purchase later that day; and (6) the confidential informant observed numerous firearms in Smith's residence, even though Smith was then under indictment and not permitted to be in possession of firearms. The state of Ohio argues that these facts were sufficient for the magistrate to conclude that there was a fair probability that evidence of a crime would be found at Smith's residence.
 {¶ 25} In addition, the state of Ohio cites to various appellate decisions that support the issuance of the search warrant in this case. Those decisions found that a combination of factors, consisting of either anonymous tips plus corroborating police surveillance,[4] or an officer's knowledge of past drug activity plus a recent controlled buy through an informant,[5] or anonymous tips plus a controlled buy,[6] or anonymous tips plus corroborating police surveillance plus a controlled buy by a reliable informant would be sufficient to establish probable cause for the issuance of a search warrant.[7]
 {¶ 26} In addition, the state of Ohio argues that, even if the affidavit is found to be legally deficient, the evidence obtained by the officers "in objectively reasonable reliance on a search warrant" issued by a magistrate, even though lacking in probable cause, will not be barred by the exclusionary rule of the Fourth Amendment to the United States Constitution.[8]
This rule has been referred to as the "good faith exception," which was adopted by the Supreme Court of Ohio in the case ofState v. Wilmoth[9] and applied by this court in the case of State v. Hawkins:
 {¶ 27} "[E]vidence obtained by officers who reasonably relied on a search warrant issued by a detached and neutral magistrate [is admissible under the good faith exception to the exclusionary rule], where no deterrent purpose would be served by excluding evidence under the circumstances present."[10]
 {¶ 28} Reviewing the affidavit in support of a search warrant in the instant case, and applying the test for probable cause that was spelled out in the case of State v. George, we hold that under the totality of the circumstances test of that case, the affidavit is legally sufficient. We emphasize that our review of the issuing judge's determination of probable cause to issue a search warrant is directed toward determining whether there exists a "substantial basis" to conclude that there was probable cause. In this context, "substantial basis" means a "`fair probability that contraband or evidence of a crime will be found in a particular place.'"[11] We do not review the issuing judge's determination de novo, and we confirm that the issuing judge does not have to satisfy an elevated burden of proof, such as beyond a reasonable doubt, in such matters. Instead, we give great deference to the issuing judge's determination.[12]
 {¶ 29} The issuing judge was able to accept as factually accurate every fact in Daniels' affidavit. We defer to that determination. Thus, there were complaints from the community that Smith was selling methamphetamine; Smith was under indictment for selling methamphetamine out of his residence; there were controlled buys in 2002 of methamphetamine from Smith's residence; the confidential informant did receive information that methamphetamine would be available for purchase later in the day on March 19, 2004; Oxycontin would also be available later that day; and the confidential informant did observe numerous firearms in Smith's residence. Giving the totality of these circumstances a common-sense view, the issuing judge properly concluded that probable cause existed for the issuance of the search warrant.
 {¶ 30} The fact that Daniels did not state in his affidavit the reasons why the confidential informant could be considered to be reliable does not render his affidavit fatally defective. While reliability of a confidential informant may have been a required element to uphold an affidavit in support of a search warrant prior to Illinois v. Gates,[13] the United States Supreme Court repudiated that requirement in favor of a totality of the circumstances approach in that case.[14] Formerly, the affidavit in support of a search warrant "first had to adequately reveal the `basis of knowledge' of the [affiant] — the particular means by which he came by the information given in his [affidavit]. Second, it had to provide facts sufficiently establishing the `veracity' of the affiant's informant or, alternatively, the `reliability' of the informant's report in this particular case."[15] The court listed numerous reasons in support of its departure from the Aguilar-Spinelli
two-pronged rule, but among those was that warrants are "issued on the basis of nontechnical, common-sense judgments of laymen applying a standard less demanding than those used in more formal legal proceedings," and that the warrant process should be encouraged, not saddled with close judicial scrutiny accorded to formal legal proceedings.[16]
 {¶ 31} In the instant case, there were anonymous tips of methamphetamine sales, there was Daniels' knowledge of past drug activity, and there was a confidential informant who furnished Daniels with information on drug activity in progress. We deem these circumstances sufficient to uphold the validity of the affidavit in question.
 {¶ 32} The assignment of error is without merit.
 {¶ 33} The judgment of the trial court is affirmed.
Grendell, J., Rice, J., concur.
[1] See companion case of State v. Smith, 2004-A-0089.
[2] State v. George (1989), 45 Ohio St.3d 325, paragraph one of the syllabus.
[3] (Emphasis in original.) Id. at paragraph two of the syllabus.
[4] State v. Ross (Jan. 16, 1998), 6th Dist. No. L-96-266, 1998 Ohio App. LEXIS 94, at *10, citing Alabama v. White
(1990), 496 U.S. 325.
[5] State v. Morgan (1988), 55 Ohio App.3d 182, 184.
[6] State v. Richard (Jan. 10, 2002), 8th Dist. No. 78813, 2002 Ohio App. LEXIS 74, at *8-11.
[7] State v. Harriston (1989), 63 Ohio App.3d 58, 62.
[8] State v. George, supra, paragraph three of the syllabus.
[9] State v. Wilmoth (1986), 22 Ohio St.3d 251, paragraph one of the syllabus.
[10] State v. Hawkins (1997), 120 Ohio App.3d 277, 281.
[11] State v. George, supra, at paragraph one of the syllabus.
[12] State v. George, supra, at paragraph two of the syllabus.
[13] See Spinelli v. United States (1969), 393 U.S. 410;Aguilar v. Texas (1964), 378 U.S. 108.
[14] Illinois v. Gates, 462 U.S. at 238-239.
[15] Id. at 228-229.
[16] Id. at 235-237.